[Civ. No. 21757. Second Dist., Div. Two. Dec. 14, 1956.]

THEODORE C. ROBINSON et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

Herschel E. Champlin for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Claude E. Hilker, Deputy City Attorney, for Respondents.

ASHBURN, J.—Plaintiffs-appellants attack as arbitrary and unreasonable ordinance Number 102641, which amended the comprehensive zoning ordinance (No. 90500) of the city of Los Angeles so as to rezone approximately 785 acres of vacant land in the northwesterly portion of San Fernando Valley from RA, A1 and A2 (agricultural uses) to M2 and M2-0 (light industrial uses). Properties owned by the plaintiffs, some 12 in number, are not within the rezoned area and are located at distances beyond its confines varying from 980

to 1,320 feet. Appellants assert that the rezoning was initiated by the city planning commission, and say in their opening brief: "All procedural steps required by the City Charter were observed and no attack was made or issue raised at the trial regarding procedure followed." The record shows that elaborate hearings were held before the planning commission, and further hearings by the city council, at which the various objections now urged were advanced and considered and held to be not valid reasons for withholding the rezoning.

Appellants' major contentions are that the rezoning has and will depreciate the value of their homes situated in the general neighborhood, and that permitting light industry in that portion of the valley is not consistent with the general welfare because *inter alia* existing roads and sewers are inadequate to accommodate the traffic which will be developed by the improvement of this vacant land in conformity with the new ordinance.

The trial court made a finding 16, as follows: "It is true that the Council of the City of Los Angeles considered each and every of the following factors, each of which is true, or may have had them in mind, at the time of passing Ordinance No. 102,641: (a) Industry within the San Fernando Valley was inadequate to supply the necessary industrial employment for the inhabitants thereof. (b) The amount of industrially zoned land as compared to otherwise zoned land was much less proportionately within the San Fernando Valley portion of the City of Los Angeles than in the remainder of the City. (c) The amount of industrially zoned land as compared to population was much less proportionately within the San Fernando Valley portion of the City of Los Angeles than within the remainder of the City. (d) A far greater number of persons were commuting from the San Fernando Valley for their employment than were entering for such purpose. (e) Plots of land available for industrial development within the San Fernando Valley portion of the City of Los Angeles were scattered in location, small in size and diverse in ownership and thus greatly hindered industrial development thereof. (f) The rezoned land here in question is located in one of the least populated portions of the San Fernando Valley, and the possible annoyance as a result of the rezoning thereof will thus be inflicted on the least possible number of persons. (g) The terrain of the rezoned area here in question is essentially flat, and thus lends itself most easily to industrial development. (h) The re-

zoned area here in question is, in the main, undeveloped other than the agricultural use of portions thereof, and thus when eventually developed would have among the least nonconforming uses of any like size area within the San Fernando Valley. (i) The extension of the existing population numerical trend within the San Fernando Valley indicated a population therein of approximately one million persons by the year 1965. (j) The population directional trend within the San Fernando Valley was toward the west end of the Valley. (k) Most, if not all, of the owners of the land within the rezoned area favored such rezoning, and none expressed any opposition or objection to such rezoning. (1) The Southern Pacific Railroad Line runs through the heart of the rezoned area and thus provides shipping facilities essential to industrial development, but detrimental to residential development. (m) The rezoned area was one of the best located in the San Fernando Valley from the standpoint of availability of industrial power. (n) The rezoned area was one of the best located in the San Fernando Valley from the standpoint of availability of industrial quantities and pressures of water. (o) The master plan of the City of Los Angeles indicated ample highway and roadway access to the rezoned area. (p) Large amounts of industrial land within the City of Los Angeles portion of the San Fernando Valley have been used for other than industrial purposes or have been rezoned for residential use, thus magnifying the shortage of industrially zoned land. (q) Light industrial development would not necessarily retard or restrict and could well enhance nearby residential growth. (r) Light industrial development would not necessarily impair and could well increase nearby residential land values. (s) Large buffer areas were provided between the rezoned area and the nearest residential development." Appellants' counsel does not undertake to show, except by way of general arguments, that the evidence fails to support these findings.

The principles upholding zoning ordinances as valid exercise of the police power in furtherance of the general welfare are well established in this state. (See *Miller* v. *Board of Public Works,* 195 Cal. 477, 487 [234 P. 381, 38 A.L.R. 1479]; *Jones* v. *City of Los Angeles,* 211 Cal. 304, 307 [295 P. 14].) "As our civic life has developed so has the definition of 'public welfare' until it has been held to embrace regulations 'to promote the economic welfare, public convenience and general prosperity of the community.' (*Chi-*

*cago, B. & Q. R. Co.* v. *Illinois, supra* [200 U.S. 561 (26 S.Ct. 341, 50 L.Ed. 596, 4 Ann.Cas. 1175)].) Thus it is apparent that the police power is not a circumscribed prerogative, but is elastic and, in keeping with the growth of knowledge and the belief in the popular mind of the need for its application, capable of expansion to meet existing conditions of modern life and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race." (*Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 485.) It also has been noted in the following decisions that the police power develops and expands with, and advances to meet, changing conditions: *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31, 43 [207 P.2d 1, 11 A.L.R.2d 503] ; *Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 484.

 While a zoning ordinance, or its application to particular property, must have a "reasonable tendency to promote the public morals, health, safety, or general welfare and prosperity of a community" (*Miller* v. *Board of Public Works, supra,* at p. 488), and be free from arbitrary and discriminatory conception and application (*id.* 488), every intendment is in favor of validity of the action of the legislative authority, which will not be overthrown unless plaintiff produces evidence establishing physical facts justifying, or rather requiring, the conclusion that the ordinance is as a matter of law unreasonable and invalid. (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 338 [171 P.2d 542] ; *In re Angelus,* 65 Cal.App.2d 441, 454 [150 P.2d 908] ; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460-461 [202 P.2d 38, 7 A.L.R.2d 990] ; *Clemons* v. *City of Los Angeles,* 36 Cal.2d 95, 98 [222 P.2d 439] ; *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213, 215 [93 P.2d 93] ; *Otis* v. *City of Los Angeles,* 52 Cal. App.2d 605, 614 [126 P.2d 954].) The fact that plantiffs' property may depreciate in value as a result of rezoning does not establish unreasonableness or invalidity, for "[d]amage caused by the proper exercise of the police power is merely one of the prices an individual must pay as a member of society." (*Reynolds* v. *Barrett,* 12 Cal.2d 244, 250 [83 P.2d 29] ; see also authorities last hereinbefore cited.) If the matter is debatable, if reasonable minds may differ upon the question of whether the zoning is required by or consistent with the public welfare, the courts may not interfere. (*Wilkins* v. *City of San Bernardino, supra,* 29 Cal.2d 332, 339 ; *Lockard* v. *City of Los Angeles, supra,* 33

Cal.2d 453, 462; *Clemons* v. *City of Los Angeles, supra,*
36 Cal.2d 95, 98; *Reynolds* v. *Barrett, supra,* 12 Cal.2d 244,
249; *Miller* v. *Board of Public Works, supra,* 477, 490.)
 The boundary between different zones inevitably must
be drawn and that is the function of the municipality, not
the courts. (*Wilkins* v. *City of San Bernardino, supra,* p. 341;
*Lockard* v. *City of Los Angeles, supra,* p. 468; *Reynolds*
v. *Barrett, supra,* p. 249.) The wisdom of the decision is
not subject to judicial review. (*Wheeler* v. *Gregg,* 90 Cal.
App.2d 348, 361 [203 P.2d 37]; *Lockard* v. *City of Los
Angeles, supra,* p. 461.)

 It is apparent from the foregoing authorities that
appellants' complaint that their properties, situated from
one-fifth to one-fourth of a mile from the rezoned area, have
depreciated or will depreciate in value is not well taken
in point of law. They have no vested right to continuity
of zoning of the general area in which they reside. ''They
have no vested right in the maintenance of restrictions on
the property of defendants. It may be true that to continue
the zoning restrictions upon defendants' property would con-
fer benefits on neighboring owners, including plaintiffs, and
enhance the value of their properties, but the existence of
such benefits does not generate interests protected by the
Constitution against diminution by governmental authorities
in the proper exercise of the police power. The city in the
exercise of its police power has the right to modify its zoning
regulations from time to time.'' (*Case* v. *City of Los Angeles,*
142 Cal.App.2d 66, 69 [298 P.2d 50]; see also *Wheeler* v.
*Gregg, supra,* 90 Cal.App.2d 348, 365.) The effect of
the zoning upon surrounding properties is a matter for
consideration and determination by the legislative authority.
(*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 464.)

 The argument that development of the 785 acres
(1.226 square miles) for industrial uses would create in-
tolerable congestion of traffic and inadequacy of sewer service
presupposes that roads and sewers will remain in their present
limited capacity, rather than growing in proportion to in-
creasing public demands. This is a faulty notion of the
basis for testing validity of a zoning, which necessarily looks
to the future and proceeds upon the assumption that develop-
ment of properties and facilities within and without the
zoned area will proceed harmoniously with its requirements.
*Jones* v. *City of Los Angeles, supra,* 211 Cal. 304, 309:
''Moreover, the argument of plaintiffs, carried to its logical

conclusion, would destroy the usefulness of zoning ordinances as an effective means of city planning, for it would require an examination of the regulation solely on the basis of present conditions. But zoning legislation looks to the future. It is a constructive movement in municipal legislation and, as such, it has received the approval of our courts." *Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 466: "A commercial district of this type is necessarily limited as to expansion by the development of the surrounding area, and the fact that the district has developed slowly is not determinative of the reasonableness of the restrictions, since one of the bases for zoning regulations is the guidance of future development for the protection of residential areas. (See *Sunny Slope Water Co.* v. *City of Pasadena,* 1 Cal.2d 87, 93 [33 P.2d 672.) To be effective, zoning regulations must necessarily look to the future. . . ." (To the same effect, see *Acker* v. *Baldwin,* 18 Cal.2d 341, 346 [115 P.2d 455]; *Ayres* v. *City Council of Los Angeles, supra,* 34 Cal.2d 31, 41; *In re Jones,* 56 Cal.App.2d 658, 665 [133 P.2d 418].) The fact that the city's plans for future handling of problems growing out of the development of this 785 acres are today in the formative stage is not determinative of plaintiffs' rights, nor is it prophetic of municipal ills which appellants predict. (*Ayres* v. *City Council of Los Angeles, supra,* p. 42; *Miller* v. *Board of Public Works, supra,* pp. 495-496.)

 Appellants contend also that industrial use of the 785 acres would create smog conditions now practically nonexistent in the west end of the San Fernando Valley; that a great increase in dust, noise and traffic would occur in a predominantly residential community; that the growth trend in the valley demonstrates a need for more homesites, rather than industrial locations; that during rainy seasons streets and bridges are flooded and impassable, and this condition would be greatly exaggerated by an industrial development in the subject area; that the incidence of crime is substantially greater in industrial areas than in residential neighborhoods, and that would be bad for the valley as a whole. Manifestly, these are but considerations which pertain to the public welfare in its larger aspects, questions presented for determination by the city council. It is presumed to have taken cognizance of all these matters, as well as those mentioned in the court's finding 16 quoted above. "The courts may differ with the legislature as to the wisdom and

propriety of a particular enactment as a means of accomplishing a particular end, but as long as there are considerations of public health, safety, morals, or general welfare which the legislative body may have had in mind, which have justified the regulation, it must be assumed by the court that the legislative body had those considerations in mind and that those considerations did justify the regulation." (*Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 490.)

The Wilkins case, *supra,* 29 Cal.2d 332, at page 338, states that, "it is incumbent on plaintiff to produce sufficient evidence from which the court can make such findings as to the physical facts involved as will justify it in concluding, as a matter of law, that the ordinance is unreasonable and invalid. It is not sufficient for him to show that it will be more profitable to him to make other use of his property, or that such other use will not cause injury to the public, but he must show an abuse of discretion on the part of the zoning authorities and that there has been an unreasonable and unwarranted exercise of the police power." This the appellants have not done at bar. In fact, their arguments go only to the weight of the evidence adduced in the court below.

Judgment affirmed.

Moore, P. J., and Fox, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 6, 1957.