[Civ. No. 24294. Second Dist., Div. One. May 2, 1960.]

ED BANVILLE et al., Appellants, v. COUNTY OF LOS ANGELES et al., Respondents.

Jacob Forst for Appellants.

Harold W. Kennedy, County Counsel, and Donald K. Byrne, Deputy County Counsel, for Respondents.

FOURT, J.—This is an appeal from a judgment rendered after the demurrer of defendants to plaintiffs fourth amended complaint was sustained with leave to amend and

plaintiffs advised the court that they did not desire to and did not amend their complaint.

This court has, pursuant to rule 12a of Rules on Appeal, ordered and had brought to this court the original files and records contained in cases numbered 641941 and 685699 of the Superior Court, Los Angeles County.

In Complaint Number 641941 filed March 24, 1955, the plaintiffs (one of which was Jacob Forst and who was counsel for plaintiffs and is also a plaintiff and counsel for plaintiffs in the second action) alleged among other things that each of the plaintiffs "owned land—in Little Rock—which was heretofore unzoned and usable for any purpose; that the defendants now plan to rezone said property so as to require a minimum area of one acre per home, and limit the area to use for single residence purposes." Further that, "each of the parcels were originally designed to be one or two acre parcels, but that due to allowances for streets, they are now less than 'as originally contemplated.'" Plaintiffs then alleged in effect that the zoning is to be so made because the land owners nearby "are afraid that if too many homes are built that the home-owners will object to the farms." Further that a "rezoning of the property for M-1—with a maximum of one house per unit, would satisfy the fears of the adjacent farm owners. That the plaintiffs are willing to have a meeting with the adjacent farm owners and work out a compromise solution with them."

It is further alleged in effect that the defendants have no right to limit the use of the property to A-1, with one home to the acre and that it would satisfy the demands of the adjacent owners if the use of the property in question were to be limited to one home per 25,000 square feet with a usage of M-1 or light industrial usage. It was then prayed that an injunction be issued to stop the defendants from rezoning the property in question to the "status of A-1, one acre."

The defendants filed a demurrer to the complaint and attached thereto points and authorities. The action was dismissed by the plaintiffs on June 27, 1957.

In case Number 685699 the plaintiffs in their fourth amended complaint filed on May 29, 1959, alleged as well as we can determine the following:

(1) that each of the defendants is sued as a governmental agency or an officer or agent thereof;

(2) that the several plaintiffs have joined together because each seeks the same relief and the questions of law and fact as

to each are the same; that each plaintiff owns some real property in a district in the county of Los Angeles known as Little Rock;

(3) a description of the real property or lot owned by each plaintiff;

(4) that the plaintiffs are deprived of the use of their property unconstitutionally;

(5) that prior to 1955 the property was zoned to "permit its use for manufacturing or commercial purposes" and that in the latter part of that year "defendants rezoned the property so that it could be used only for one-dwelling per acre, with non-commercial farming only," that defendants protested such rezoning and "to bring the injustice of such a rezoning to the defendants' attention, an action was filed against them, namely 641941," that such action was dismissed by the plaintiffs "as being subject to the requirement that administrative remedies must first be exhausted," that after the filing of such action the defendants rezoned the property to permit only one dwelling per acre with noncommercial farming only;

(6a) that plaintiffs have exhausted their administrative remedies in that they did "after objections were raised to action 641941" file a "petition for zoning relief—with the Regional Planning Commission——," that said petition set forth the facts and reasons for the zoning relief as follows: that across the street some property was zoned for manufacturing, that a petition was granted for an M-1 zone to property just south of the property of plaintiffs, that close by there was an auto wrecking yard, that north of the plaintiffs' property there was some land zoned for M-1, that easterly from the property of the plaintiffs there are some large buildings used for commercial agriculture and a trailer court site, that the property is four miles south of an airfield, that one of the applicants wanted to operate a used lumber yard, that it is desirous to spread out for defense purposes and to attract manufacturing to give employment;

(6b) that the regional planning commission conducted a public hearing and approved plaintiffs' petition, that "its order rezoned plaintiffs' land to M-1 on condition" that certain land be donated to the county for street widening purposes;

(6c) that the matter came before the board of supervisors in "order to enact the order, proposal and recommendation of the Regional Planning Commission by ordinance" on Jan-

uary 10, 1957 at 10 a.m., that plaintiffs were present to testify, that the board of supervisors due to press of time took the petition under submission without hearing any witnesses;

(6d) that thereafter the plaintiffs were approached by members of the road department of the county for land for rights-of-way and that plaintiffs made certain grants without cost to the county and obtained other rights-of-way for the county;

(6e) that the plaintiffs on July 8, 1957, contacted the ''Chief Administrative Officer'' property management division road department and asked them to advise the board of supervisors that plaintiffs had complied with the conditions of the regional planning commission and others, that the property management division of the road department ascertained that the board of supervisors had, without notice to plaintiffs, except by publication of notice, reheard the matter of plaintiffs' zoning on June 11, 1957, and had, without stating reasons therefor, denied zoning for relief to plaintiffs, that plaintiffs contacted the board of supervisors and ''requested a rehearing or an appeal'' that they were told that the rules of the board of supervisors did not provide for any such procedure and that the newspaper advertisement of the notice of hearing was sufficient, that the plaintiffs had no further remedy before the board of supervisors;

(7) plaintiffs' contentions are that a rezoning of a manufacturing area to a restricted usage of only one dwelling per acre with only noncommercial farming ''deprives plaintiffs of the highest and best use of their property, without due process of law,'' that ''no one wants a one acre home across the street from a garage'' and that plaintiffs' land is rendered worthless, that plaintiffs' property is not suitable for ''people who want one-acre homes,'' that the property should be rezoned for some commercial or manufacturing use in keeping with the usages in the surrounding area, ''that the court should determine the highest and best use of the property,'' that defendants be restrained from interfering with such usages by the plaintiffs as the court determines is best, that in the alternative ''the court order the defendants to make a rezoning in keeping with the findings and determination of the Court, as to what is a proper usage,'' that the ruling of the regional planning commission is a finding of ultimate fact by the administrative body of the county and that such change is best for the public, that the plaintiffs have exhausted all administrative remedies;

(8) that as to the defendants' contentions, plaintiffs do not know why the board of supervisors rejected the change, that the plaintiffs were told by a deputy county counsel that they would now have to make an application for a zone variance;

(9) that *"plaintiffs have refused to apply for a special zone variance"* (emphasis added) as it would be worthless because "no one wants so restrictive a zoning" and the term thereof might expire, that they "are entitled to a general and permanent zoning, regardless what class" in keeping with the neighborhood;

(10) that plaintiffs have no speedy, adequate remedy at law, that it is necessary for the preservation of plaintiffs' rights that they be given relief as will enable them to use their property in some manner in keeping with the neighborhood and that plaintiffs are entitled to a declaration of their rights.

As and for a second cause of action the first cause of action is incorporated by reference therein and it is then alleged that the plaintiffs have been deprived "of the highest and best usage of their property" and that if defendants continue their conduct the plaintiffs will suffer loss.

In a third cause of action the first cause of action is incorporated by reference and it is then alleged that the "acts of the defendants constitute the taking of property without due process of law." The prayer is for a declaration of rights and duties of all parties with respect to the usage of the property, for such orders as will enable the plaintiffs to effectuate the court's declaration of rights and duties and such other relief as is proper.

The defendants demurred to the fourth amended complaint upon the grounds that it did not constitute a cause of action. There was also filed by the defendants, pursuant to the rules of court, "Points and Authorities in Support of Demurrer to the Fourth Amended Complaint."

The latter document contained a certified copy of a part of Zoning Ordinance 1494, including therein sections 521 and 522 thereof, which ordinance reads in part as follows:

"An ordinance providing for the creation in the unincorporated area of the County of Los Angeles of eight (8) zones, prescribing the classes of uses of buildings, structures, improvements and premises in said several zones, and providing for building permits in said county.

"The Board of Supervisors of the County of Los Angeles do ordain as follows:

". . . . . . . . . . . . .

"Section 521. Grounds in General.

"An exception may be granted excepting property from some particular restriction or restrictions applicable to the zone in which such property is located if:

"(a) The exception is necessary for the preservation of a substantial property right of the owner.

"(b) Such exception will not be materially detrimental to the public welfare nor to the property of other persons located in the vicinity thereof.

"If there are no protests of any kind to the granting of the exception requested the Zoning Board may recommend, and the Commission may grant, the exception even though such exception is not necessary for the preservation of a substantial property right of the owner. In such a case, however, the owner is not entitled to an exception. A petition for an exception does not state sufficient facts under this section unless it states facts supporting both paragraph (a) and paragraph (b) hereof."

"Section 522. Grounds.

"An exception may also be granted where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, and in the granting of such exception the spirit of the ordinance will be observed, public safety secured, and substantial justice done."

The appellants have stated their contentions as follows: "(1) Is the question of Exhaustion of Remedies a mixed question of Fact and Law for a Trial Court, where a Petition for rezoning is approved by the Regional Planning Commission, but denied by the Board of Supervisors, without a statement of reasons (or must one file for a zone variance which is so highly restricted and limited as to be useless)? (2) Does the complaint otherwise state a cause of action?"

The question is whether the right to apply for an exception under the zoning ordinance is an administrative remedy which must be exhausted prior to an attack upon the constitutionality of the ordinance as applied to it.

Appellants cannot here be concerned with their first action for they dismissed that proceeding. It is apparent that the whole dispute between the plaintiffs and the defendants arises out of the fact that the board of supervisors refused at one time to enact a zoning ordinance in keeping with the plaintiffs' desires and thereafter rejected a recommendation of the

regional planning commission for a change of zone for the plaintiffs.

 Under our law the legislative body cannot be forced to enact or amend a zoning ordinance. The courts can declare an action of the Legislature unconstitutional where such action exceeds the limits of the Constitution, but the courts have no means and no power to avoid the effects of non-action. "The Legislature being the creative element in the system, its action cannot be quickened by other departments." (*Myers* v. *English*, 9 Cal. 341, 349.)

In this case, as we view it, the appellants have not exhausted their administrative remedies. A reading of the record clearly points up that appellants requested an amendment to the zoning ordinance to change the zone of their particular property. A change of zone is a legislative, not an administrative remedy. (*Johnston* v. *City of Claremont*, 49 Cal.2d 826, 835 [323 P.2d 71].) Amendments to a zoning ordinance which change property from one zone to another are adopted in the same manner as the original zoning ordinance (Gov. Code, § 65804), and in the same manner as a precise plan is adopted. (Gov. Code, § 65803.)

 The Government Code provisions require that there be a hearing before a planning commission and a recommendation to the Legislative body. (§§ 65650, 65653.) However, the recommendation of the planning commission does not necessarily have to be followed by the legislative body. Section 65654 of the Government Code states in part:

"Upon receipt of a copy of any proposed precise plan or regulation based upon a master or general plan or amendment of such plan or regulation, the legislative body *may* by ordinance or resolution adopt the plan or regulation. . . ." (Emphasis added.)

Appellants place great reliance in the case of *Bernstein* v. *Smutz*, 83 Cal.App.2d 108 [188 P.2d 48], but the distinguishing feature of that case is that "No administrative remedy was provided by the ordinance under attack." The ordinance with which we are concerned does have provisions for the granting of an exception as heretofore quoted.

The appellants are fully aware of the provisions of the ordinance. In their fourth amended complaint they stated: "Plaintiffs have refused to apply for a special zone variance." In the oral argument before this court, counsel for, and one of the appellants, stated:

"They're claiming that spot-zoning would be an adequate

remedy if I went and asked for it and actually I did go up there to ask them about it and I found in each case I was so hemmed in with restrictions as to the time and as to, I have to come up there with the exact type of building, the building then would have to be right in the spot-zone, the exact use would have to be in the spot-zone, the exact time and they've got it so hemmed in with rules and regulations that it's only in a rare case where somebody has a specific building in mind for a specific use, for a specific time that it's any good.

"

". . . I did go and speak to the officers about the special zone and I was told what I'd be up against and I put that in the Complaint and I told them I didn't want it because it was too defective, it was inadequate."

If and when appellants make an application for an exception and unreasonable restrictions or conditions are imposed upon the grant of such an exception, then appellants may very well have a good cause of action. Up until this time however there is nothing in any of the complaints on file to indicate or show that such an application has been made by the appellants.

In the case of *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 at 292 [109 P.2d 942, 132 A.L.R. 715], it is stated:

"This is the doctrine of 'exhaustion of administrative remedies.' In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act. The authorities to this effect are so numerous that only the more important ones need be cited here as illustrations. (Citations.) . . . . The California cases have consistently applied this settled rule. . . .

"The rule itself is settled with scarcely any conflict. It is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis*, and binding upon all courts. We are here asked to sanction its violation, either on the ground that a valid exception to the rule is applicable, or that despite the uniformity with which the rule has been applied, it may be disregarded by lower tribunals without fear of prevention by the higher courts. This last point cannot be too strongly emphasized, for the rule will disappear unless this court is prepared to enforce it. To review such action

of a lower court only on appeal or petition for hearing would permit interference with the administrative proceeding pending the appeal or hearing, with the effect of completely destroying the effectiveness of the administrative body. The writ of prohibition can alone operate surely and swiftly enough to prevent this unfortunate result; and only if we recognize that the rule is jurisdictional will it be uniformly enforced. Bearing in mind the analysis of jurisdiction which has heretofore been made, and examining the authorities dealing with the rule, we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts.''

And, in *Metcalf* v. *County of Los Angeles,* 24 Cal.2d 267 [148 P.2d 645] which involved ordinance 1494, New Series, of the County of Los Angeles, the court referred to a section of the ordinance which provides that:

''. . . Section 21 of that ordinance provides that an owner of property located within any zone established thereby may petition the Regional Planning Commission to have his property excepted from any particular restriction applicable to such property, that the commission shall cause an investigation to be made and file its report with the board of supervisors, and that the board may except such property from the restriction if it is satisfied that the exception is necessary for the preservation and enjoyment of any substantial property right of the petitioner and is not materially detrimental to public welfare or injurious to the other property in the vicinity. . . .''

And, stated that the plaintiff had not applied for an exception pursuant to the ordinance. The court further stated at page 269:

''A party aggrieved by the application of a statute or ordinance must invoke and exhaust the administrative remedies provided thereby before he may resort to the courts for relief. (*Alexander* v. *State Personnel Board,* 22 Cal.2d 198, 199 [137 P.2d 433]; *United States* v. *Superior Court,* 19 Cal. 2d 189, 194 [120 P.2d 26]; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715]; *Gantner & Mattern Co.* v. *California E. Com.,* 17 Cal.2d 314, 317 [109 P.2d 932]; *Teeter* v. *Los Angeles,* 209 Cal. 685, 687 [290 P. 11].)''

And at page 271 it is said:

''. . . In our opinion, until an application for a variance or exception is made and acted upon, the 'legislative process

remains incomplete.' (*Porter* v. *Investors Syndicate*, 286 U.S. 461, 468 [52 S.Ct. 617, 76 L.Ed. 1226].) This conclusion is strengthened by the fact that in excepting property from the restrictions of Ordinance No. 1494 the board of supervisors may impose 'such terms and conditions as said board may deem proper under the . . . circumstances.' If the landowner is permitted to ignore the procedure set forth in the ordinance whereby he may have his property excepted from the restrictions thereof, the board's statutory power to impose terms and conditions upon particular uses of property is circumvented. Equity's jurisdiction is limited by the existence of a tribunal created or given additional powers for the very purpose of making factual determinations and alleviating the hardships of an oppressive statute as applied to the facts related by each complainant.''

██ And, at page 272 it is further stated:

''The fact that an exception might have been granted or denied in the discretion of the board of supervisors had application been made (*Rubin* v. *Board of Directors*, 16 Cal. 2d 119, 126 [104 P.2d 1041]; *Regan* v. *Council of City of San Mateo*, 42 Cal.App.2d 801, 806 [110 P.2d 95]), does not render the remedy inadequate.''

See also *Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 834 [323 P.2d 71], where it is said:

'' . . . . . .

██ ''3. A board of supervisors in granting a permit under a zoning ordinance acts in an administrative capacity. (*Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [6] [187 P.2d 686]; *Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 623 [3] [213 P.2d 492].)

██ ''4. A zoning ordinance constitutes the exercise of a governmental and legislative function and is subject to change by the legislative power. (Gov. Code, § 65804; 8 McQuillin, Municipal Corporations (3d ed. rev. 1957), Zoning, § 25.65, p. 145; . . . cf. *Dwyer* v. *City Council, supra,* at p. 515 [200 Cal. 505 (253 P. 932)]; *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 341 [5] [175 P.2d 542]; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460 [2] [202 P.2d 38, 7 A.L.R.2d 990].)

'' . . . . . . . . .

██ ''Even assuming, however, as would be justified from the record, that plaintiffs' property would be more valuable if it were commercially zoned, such factor would not be

determinative. As was said in *Lockard* v. *City of Los Angeles, supra,* at page 466 et seq.: 'Exercises of the police power . . . are apt to have an adverse effect on property interests, and the fact that some hardship is experienced or that it may be more profitable to make other use of the property is not controlling in determining whether the regulations are arbitrary or unreasonable.' "

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 24, 1960, and appellants' petition for a hearing by the Supreme Court was denied June 29, 1960.