[Civ. No. 35308. Second Dist., Div. One. May 19, 1970.]

FRANCIS W. HILTON, JR., et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF SANTA BARBARA COUNTY et al.,
Defendants and Respondents;
MINNIE E. McNUTT et al., Real Parties in Interest and Respondents;
GOLETA VALLEY HOUSING COMMITTEE,
Intervener and Respondent.

## COUNSEL

Enlow & Haws and E. Jerald Haws for Plaintiffs and Appellants.

George P. Kading, County Counsel, and Susan Trescher, Deputy County Counsel, for Defendants and Respondents.

Goux & Romasanta and J. F. Goux for Real Parties in Interest and Respondents.

Eckert & O'Gorman and C. Brian O'Gorman for Intervener and Respondent.

## OPINION

LILLIE, J.—As owners of real property within the area involved, petitioners sought by mandamus (§ 1085, Code Civ. Proc.) to compel respondent supervisors to rescind a rezoning amendment to a county zoning ordinance. General demurrers to the petition as amended[1] having been interposed by respondents, real parties in interest and an intervener, the same were sustained without leave to amend. Petitioners appeal from the ensuing judgment dismissing the action.

The property affected by the change in zoning comprises approximately

---

[1] Petitioners' original pleading sought "administrative" mandamus (Code Civ. Proc., § 1094.5); upon the filing of demurrers thereto, but before hearing thereon, they filed an amended petition seeking relief by way of "ordinary" or "traditional" mandamus (Code Civ. Proc., § 1085).

5 acres located in Goleta; formerly it was zoned 6-R-2, Two Family Residential District permitting duplexes on net lot acres of 7,000 square feet. By an application filed with the planning commission on February 6, 1969, Goleta Valley Housing Committee (the intervener here) requested a change in zoning to DR-20, Design Residential District permitting 20 dwelling units per gross acre. Following noticed hearings before the planning commission and the board of supervisors the property, by an amending ordinance, was ultimately rezoned DR-16 which included, under provisions of said ordinance, a Development Plan permitting 15 townhouses or apartments per acre but not in excess of 75 units for the entire property.

According to the amended petition, at all pertinent times there was in effect a certain county zoning ordinance No. 661, article XIII thereof providing that such ordinance or any of its provisions could be amended in accordance with the procedure set forth in the Conservation and Planning Act (Gov. Code, § 65500 et seq.); referred to were amendment procedures set forth in the ordinance, namely, the initiation of such amendment by a verified petition of one or more property owners affected thereby, the payment of a nonrefundable fee by the petitioner to cover administrative expenses (including sending out of notices) and other matters not here material. Although, as alleged in the petition, published and timely notice pursuant to section 65854 subdivision (a) of the Government Code was given of the public hearing before the planning commission, it was also alleged that two notices were subsequently *mailed* to all property owners within 300 feet of the property proposed to be rezoned, these subsequent notices, being given pursuant to the further provision in section 65854 subdivision (c) that "In addition to notice by publication, a county or city may give notice of the hearing in such manner as it may deem necessary or desirable." While the published notice did not so err, the first of the mailed notices erroneously stated that the proposed amendment would allow "20 dwelling units per gross *area*," while the second (and subsequent) mailed notice corrected such error by stating that the amendment would permit "20 dwelling units per gross *acre*." The pleading thereafter alleges that the planning commission, disregarding "the above stated misleading and confusing proliferation of conflicting notices," went ahead with its hearing on the noticed date; that at such hearing evidence presented in opposition to the proposed rezoning, consisting (among other things) of the massive traffic problems to be created by the potential presence of hundreds of children in a heavy traffic area, was "disregarded"; that instead, the planning commission accepted "*in toto* the barest evidence of alleged 'low cost' housing from the alleged 'corporate' petitioner," the intervener here being so described since the application was filed in the name of a non-existing entity, unregistered with the Division of Corporations and with no

fictitious name application on file, and as a result of these latter omissions, the "public" was unable to determine with whom it was dealing; and that as a further result of all the above errors and omissions, "the 'public' was confused, bewildered, disoriented and misled, was unable to retain the services of competent counsel to aid them at the 'public' hearing, and their property rights and their economic assets, their homes and families were affected without due process of law"; that the above notwithstanding, although called to its attention, the rezoning recommendations of the planning commission were forwarded to respondent board of supervisors which, after proper notice thereof, proceeded with a public hearing. After the reception of evidence at such hearing, the supervisors (with one dissent) voted to adopt the amending ordinance sought to be set aside.

With respect to the proceedings before respondent board, it is alleged that they were not had as prescribed by law by reason of the deficiencies and errors in procedure above mentioned, all of which were brought to the board's attention; that no substantial evidence was produced by any person properly before the planning commission tending to show any reason why the rezoning should take place, and petitioners' claims in that regard were arbitrarily disregarded by respondent board; and that the evidence presented to the board overwhelmingly favored a denial of the rezoning amendment, the ignoring of which evidence amounted to a prejudicial abuse of discretion on the part of respondent body.

While special demurrers on the ground of unintelligibility and uncertainty were interposed by certain of the demurrants, the court did not rule thereon, sustaining without leave to amend the general demurrers filed by all three appearing respondents on the grounds that (1) the amended petition failed to state a cause of action and (2) the court lacked jurisdiction of the subject matter of the amended pleading. For the following reasons we think that the court's ruling was proper.

At the outset it is settled that the sufficiency of a petition in a mandamus proceeding can be tested by demurrer. (*Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 106-107 [280 P.2d 1].) Provision for the writ here sought is found in section 1085, Code of Civil Procedure, which declares that it "may be issued . . . to any . . . board, or person, to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station . . ." By the statute's very terms it is thus limited to the enforcement of purely ministerial duties and "will not lie to control discretion within the area lawfully entrusted to the administrative agency." (*Faulkner* v. *California Toll Bridge Authority,* 40 Cal.2d 317, 326 [253 P.2d 659].) There is no allegation by petitioners, nor could there be, that it was the ministerial

duty of respondents to rescind the ordinance here involved, since numerous cases uniformly hold that the enactment of a zoning ordinance is purely a legislative act and a governmental function. (See *Johnston* v. *City of Claremont,* 49 Cal.2d 826, 834 [323 P.2d 71]; *Tandy* v. *City of Oakland,* 208 Cal.App.2d 609, 611 [25 Cal.Rptr. 429]; *Ferris* v. *City of Alhambra,* 189 Cal.App.2d 517, 522 [11 Cal.Rptr. 475]; *Banville* v. *County of Los Angeles,* 180 Cal.App.2d 563, 567 [4 Cal.Rptr. 458].) Too, since the passage of a zoning ordinance is a legislative act, it necessarily follows that the vacating of such an enactment (the relief here sought) is likewise legislative in character. As in *Tandy* v. *City of Oakland, supra,* "the complaint simply asks the court to issue the writ to compel the city council of the defendant city to perform a legislative act. . . . It is elementary that the courts have no such power." (*Supra,* p. 611.)

■ Despite the determinative nature of the foregoing language, as their first point on appeal petitioners nevertheless argue that they are not asking that respondent body perform a legislative act but, on the contrary, that the court order it to undo what has been done illegally. First and foremost, in this regard, is the claim that the planning commission recommended amendment of the ordinance without following the procedure prescribed by statute (Gov. Code, § 65854, subd. (a)), or, as further alleged, without taking the steps set forth in the ordinance itself with respect to the initiation of such amendment by a verified petition. Cited by petitioners is *Hein* v. *Daly City,* 165 Cal.App.2d 401 [332 P.2d 120], wherein the court stated (quoting an earlier decision) that " 'The zoning law vests in the legislative body of the city broad discretionary power, but when the method for the exercise of the power is prescribed by the statute such method is the measure of the power to act.' [Citation.]" (Pp. 405-406.) The case, in our view, is no authority for the contentions here advanced. Preliminarily, the decision points out that the entire proceedings there challenged were considered by both the city council and planning commission as being governed by the city ordinance and any compliance with the Government Code was purely accidental. However, the court continued, "those facts would not invalidate the ordinance . . . if in fact there was a complete compliance with the Government Code requirements." (P. 403.) Although the petition in the proceeding at bar alleges that a certain designated county ordinance requires that the amending process "may" be initiated by the filing of a verified petition, which allegedly was not here done, the requirements of the Government Code apparently contain no such provision (see §§ 65853 through 65857). Too, the petitioners expressly refer to section 65854, subdivision (a), which provides for the giving of notice; as above shown, they now claim that although the published notice, prescribed by such statute, was timely given, the additional notice (also therein

provided for) confused and misled the property owners to whom such additional notice was mailed. But, as the language of the statute indicates, the giving of this additional notice was merely permissive, whereas the published notice was made a mandatory part of the amending procedure.

Further, it appears that the *Hein* case was decided in 1958, some seven years before the enactment (in 1965) of section 65801, Government Code.[2] As provided in the concluding sentence thereof, it shall not be presumed that error in matters of this kind is prejudicial or that injury was done if error is shown, such error being specifically made applicable to any "irregularity" or "omission" as to any matter pertaining to "petitions, applications, notices . . . or any matters of procedure whatever . . ." Even absent the above enactment, the pertinency of which here seems most compelling, there is no allegation by petitioners that they were misled by the two mailed notices into staying away from the hearing before the planning commission or whether other property owners, on whose behalf the instant proceeding is assertedly brought, absented themselves for the same reason.[3] Nor is there any statement whether subsequently they did, or did not, attend such hearing; too, if they did attend, whether they protested the form of notice here challenged. ■ "The general rule is that one who has been notified to attend a certain proceeding and does do so, cannot be heard to complain of alleged insufficiency of the notice; it has in such instance served its purpose. . . . The rule also applies to a hearing upon a zoning application. [Citations.]" (*De Luca* v. *Board of Supervisors,* 134 Cal.App.2d 606, 609-610 [286 P.2d 395].) ■ True, there is an allegation that the two confusing notices sent by mail prevented petitioners and other owners opposed to the proposed amendment from "organizing

[2] Section 65801 reads as follows: "Formal rules of evidence or procedure which must be followed in court shall not be applied in zoning matters, except to the extent that a county or city may provide therefor. No action, inaction or recommendation regarding any zoning matter by any legislative body or any administrative body or official of any county or city shall be held void or invalid or be set aside by any court on the ground of the improper admission or rejection of evidence or by reason of any error, irregularity, informality, neglect or omission (hereinafter called 'error') as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports, recommendations, appeals or any matters of procedure whatever, including, but not limited to, those included in this section, unless after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of was prejudicial, and that by reason of such error the party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error had not occurred or existed. There shall be no presumption that error is prejudicial or that injury was done if error is shown."

[3] It may be questioned whether petitioners had the right to bring this suit under section 382, Code of Civil Procedure, since all the owners are not united in interest; as appears from the amended pleading, the contest here in many ways is not between the owners and respondent supervisors but between different groups of owners. (See *Horton* v. *Citizens Nat. etc. Bank,* 86 Cal.App.2d 680, 683 [195 P.2d 494].)

[themselves] into a cohesive opposition . . . ," but the summary of the proceedings before the planning commission, annexed to the amended petition as an exhibit, reveals, under "Arguments Presented in Opposition," substantially the same contentions which petitioners would like to reallege in still another amended petition and have tried on the merits.

This brings us to petitioners' remaining contention that it was an abuse of discretion, and therefore reversible error, for the court to sustain the demurrers without leave to amend. Petitioners properly argue that abuse of discretion in sustaining a demurrer without leave to amend is reviewable on appeal even in the absence of a request (as here) for leave to amend. (*Faulkner* v. *California Toll Bridge Authority, supra,* 40 Cal.2d 317, 331.) Nevertheless, the burden of showing such abuse rests upon the appellant and the reviewing court should reverse only where there is a manifest abuse of discretion in refusing leave to amend. (*Harrison* v. *Hanson,* 165 Cal.App.2d 370, 376 [331 P.2d 1084].) Where an appellant does not indicate, either in the trial court or in this court, the manner in which the complaint is proposed to be' amended, an abuse of discretion is not shown. (*Filice* v. *Boccardo,* 210 Cal.App.2d 843, 847 [26 Cal.Rptr. 789].) Here petitioners have sought to escape the impact of the above rule by stating in their briefs that additional factual matters could have been set forth in an amended pleading which would further substantiate the cause of action here pleaded. Some of these additional matters include an increase in population density set forth with considerable specificity, an increase in automobile traffic problems, inadequate school facilities for the expected increase in children of school age, a loss by way of property depreciation of $2,000 per each owner as the result of the project, and additional testimony by experts in the fields of community relations, industry and labor regarding the harmful effect of the proposed rezoning. A reading of summaries of the proceedings before both the planning commission and respondent board discloses that the above additional factual matters are simply cumulative of similar points made before those two bodies. Too, the question here is whether the amended ordinance sought to be rescinded was a valid legislative enactment. For example, the claim is made above that property values would depreciate by reason of the change in zoning; but, as pointed out in *Robinson* v. *City of Los Angeles,* 146 Cal.App.2d 810, 815 [304 P.2d 814], that fact "does not establish unreasonableness or invalidity, for '[d]amage caused by the proper exercise of the police power is merely one of the prices an individual must pay as a member of society.' [Citation]." The case just cited also disposes of the complaint made there, and here, that the rezoning would create intolerable congestion of traffic. (146 Cal.App.2d at pp. 816-817.)

"Under our law the legislative body cannot be forced to enact or

amend a zoning ordinance." (*Banville* v. *County of Los Angeles, supra,* 180 Cal.App.2d 563, 570.) The above declaration is but another statement of settled decisional law that the act here sought by petitioners to have performed is legislative, not ministerial, in character. In view thereof, and in light of the mandate to the judicial branch of government contained in section 65801, Government Code, respecting the presumption of validity to be accorded hearings on zoning matters, under the facts pleaded the court did not abuse its discretion in sustaining the demurrers without leave to amend. "When it is clearly indicated that plaintiff would be unable to amend to state a cause of action it is proper for the court to sustain the demurrer without leave to amend. Leave to amend is appropriately withheld where it is clear that plaintiff is seeking the 'legally impossible.' [Citation.] This is the situation here." (*Robinson* v. *Robinson,* 198 Cal.App.2d 193, 197 [17 Cal.Rptr. 786].)

The judgment is affirmed.

Wood, P. J., and Gustafson, J., concurred.