■ In the Matter of GLENEL REALTY CORP., Respondent, against CARROLL M. WORTHINGTON, as Building Inspector of the Town of Greenburgh, Appellant. BERNARD M. TESCHNER et al., Appellants.— Appeal by the building inspector of the Town of Greenburgh, from an order, which, *inter alia,* (a) directs him to issue to Glenel Realty Corp., respondent on this appeal, a permit to complete the erection of one- and two-story buildings, to be used as a retail shopping center on its 14-acre tract of land, and (b) denies the application of neighboring property owners to intervene as parties in the proceeding, and (c) permits said property owners to appear in the proceeding as *amici curiæ*. The said property owners appeal from the order except insofar as it grants permission to appear as *amici curiæ*. Appeal by the property owners insofar as it directs the issuance of the permit, dismissed, without costs. Order unanimously affirmed, with $50 costs and disbursements to respondent, payable by the appellant building inspector. Special Term properly exercised its discretion in refusing to join the neighboring property owners as parties to the proceeding. In any event, for all practical purposes they do not appear to have been prejudiced. Their appearance as *amici curiæ* has enabled them to give to the court a full presentation, without limitation, of all their contentions as though they were parties to the proceeding. Not being parties, however, they are not entitled to appeal formally from the order insofar as it directs the building inspector to issue the permit. Hence, their appeal from this part of the order must be dismissed. In an article 78 proceeding, a final order may be granted summarily on the return day if the record discloses that no triable issue exists as to any material fact upon which the right to relief depends (Civ. Prac. Act, § 1295; *Matter of Ackerman* v. *Kern*, 256 App. Div. 626, 630, affd. 281 N. Y. 87; *Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464, 471). The learned Justice at Special Term, after examining the voluminous record and exhibits, found that there was no triable issue as to any such fact. We agree. On the basis of the material facts admitted or undisputed, or uncontradicted, the respondent, in our opinion, had, by November 6, 1956, the date the town zoning ordinance was amended, acquired a vested right to complete the superstructures for any legal use consistent with the ordinance prior to such amendment. The record establishes that prior to such date the respondent, in reliance on the four permits issued for the excavation and foundation work, (1) had completed the excavation work, had poured all the concrete for the foundations and had almost completed them, and (2) had assumed contractual obligations aggregating $787,726, and had actually made payments of $212,281 on account of such obligations. It is immaterial under the circumstances here present that some of these obligations and some of these payments may have antedated the permits. The indisputable fact remains that a substantial part of the excavation and foundation work was done after the issu-

ance of the first permit on August 31, 1956 and before the amendment of the zoning ordinance on November 6, 1956. It is therefore unnecessary to allocate the total obligations and total payments between the portion of the work which antedated the permits and the portion of the work which postdated them. Indeed, all the obligations may well be said to have been justifiably assumed and all the payments may well be said to have been justifiably made in reliance on the permits—whether such reliance was upon their anticipated, or upon their actual, issuance. In any event, the record abundantly establishes that prior to November 6, 1956, the respondent in good faith had virtually completed the foundations and that the cost of such foundations in proportion to the cost of any one- or two-story "taxpayer" superstructure, is substantial. It is well settled that one who, in reliance upon a permit validly issued by a municipality, in good faith makes substantial improvements and incurs substantial expense in order to make his land suitable for a specific purpose or use, acquires a vested right to such use, even though, by reason of subsequent changes in the zoning ordinance such use has become a prohibited or nonconforming use (*Riverdale Community Planning Assn.* v. *Crinnion,* 133 N. Y. S. 2d 706, affd. 285 App. Div. 1047, appeal dismissed, 1 N Y 2d, 689; *Herskovits* v. *Irwin,* 299 Pa. 155; *City of Buffalo* v. *Chadeayne,* 134 N. Y. 163, 165-166; *People ex rel. Ortenberg* v. *Bales,* 224 App. Div. 87, affd. 250 N. Y. 598; *Matter of Caponi* v. *Walsh,* 228 App. Div. 86, 89; *Matter of Pelham View Apts.* v. *Switzer,* 130 Misc. 545). On the argument the appellant building inspector contended that such vested right, if any, must be confined to the foundation only, and does not extend to the completion of the superstructure or its use. Such an argument is not only shocking to the sense of justice but also leads to a *reductio ad absurdum.* The foundation is an integral part of the whole structure; it *is the foundation.* Where, as here, the superstructure is a one- or two-story "taxpayer" and part of the basement is to be utilized for rental purposes, the foundation may be said to be a major part of the whole structure. Consequently, the vested right in the foundation must connote a vested right to the erection and subsequent use of the specific superstructure for which the foundation was designed. It is the construction of the foundation and the substantial cost thereof which establish and define the builder's vested rights in relation to the superstructure and its use, and which entitle him to complete it in accordance with the zoning ordinance in force at the time of the construction of the foundation (*Riverdale Community Planning Assn.* v. *Crinnion, supra; Herskovits* v. *Irwin,* 299 Pa. 155, *supra; Matter of Ohlau* v. *Kleinert,* 209 App. Div. 824 [two appeals]; *Amereihn* v. *Kotras,* 194 Md. 591, and cases there cited). Indeed, the four permits here, which had been issued on the basis of foundation plans only, were not restricted solely to the construction of the foundation. Instead, by express language, all of them relate to permission to erect the entire structure. Thus, permit No. 9535 grants permission to erect "a mercantile building (shopping center)"; permit No. 9640 grants permission to erect a "two story commercial building"; and permits No. 9598 and No. 9606 grant permission to erect "a mercantile building". The completed foundations, designed as they are for superstructures to be built in accordance with the original zoning ordinance, may also be said to constitute an existing nonconforming use with respect to such superstructures. The record clearly establishes that the abolition of such use would cause a substantial loss to the respondent. Under such circumstances the nonconforming use is protected and may continue despite the subsequent change in the zoning ordinance prohibiting such use (see cases cited *supra;* cf. *People* v. *Miller,* 304 N. Y. 105, 107; *Elsinore Property Owners Assn.* v. *Morwand Homes,* 286 App. Div. 1105;

*Amereihn* v. *Kotras,* 194 Md. 591, *supra,* and cases there cited). Moreover, by the express provisions of sections 1 and 4 of the town zoning ordinance, every existing nonconforming use and every permit issued are protected and rendered immune from any subsequent change in the ordinance. Where, as here, in reliance upon validly issued permits, a builder has constructed the foundation and has expended substantial sums and incurred very substantial obligations, the provisions above mentioned are sufficient, in and of themselves, to entitle him to a final permit to complete the superstructure in accordance with the zoning ordinance in effect when such permits were issued (*Matter of Ohlau* v. *Kleinert,* 209 App. Div. 824, *supra*). Nor do we agree with the contention of the appellant building inspector that prior to November 6, 1956, section 8A of the ordinance prohibits the erection of a building designed for the retail sale of merchandise unless the sales are "primarily for the residents of the community." As we read this section, the qualification quoted is appurtenant only to the rendition of services. The town officials in effect so construed the section when, with knowledge of the respondent's proposed use, the four permits were issued without raising the question, and when the section was thereafter amended to expressly require *that retail sales as well as personal services* shall be "primarily for the residents of the community." This practical construction of the ordinance by the town officials is entitled to persuasive, if not controlling, weight (*Matter of 440 East 102nd St. Corp.* v. *Murdock,* 285 N. Y. 298, 309; *Ferraiolo* v. *O'Dwyer,* 302 N. Y. 371, 376; *Matter of Kolb* v. *Holling,* 285 N. Y. 104, 107; *Skidmore* v. *Swift & Co.,* 323 U. S. 134; *Insurance Co.* v. *Dutcher,* 95 U. S. 269, 273). If there be any ambiguity in the language of section 8A (as unamd.) or doubt as to its meaning, such ambiguity and such doubt must be resolved in favor of the property owner. Every zoning ordinance, being in derogation of the common law, must be construed strictly against the municipality (*Matter of 440 East 102nd St. Corp.* v. *Murdock, supra,* p. 304, and cases there cited; cf. *Diamond* v. *Diamond,* 307 N. Y. 263, 267; *Matter of Schwarz* v. *General Aniline & Film Corp.,* 305 N. Y. 395, 404-405). In view of the foregoing it becomes unnecessary to consider any of the constitutional questions raised. Present—Wenzel, Acting P. J., Beldock, Murphy, Hallinan and Kleinfeld, JJ.