THE STATE, EX REL. MAR-WELL, INC., ET AL., *v.* DODGE, ZONING INSPECTOR, ET AL.*

(No. 4911—Decided June 22, 1960.)

---

*Appeal settled and dismissed by agreement of parties, December 7, 1960.

*Mr. Warren W. Gibson*, for plaintiff.

*Messrs. Hershey, Browne, Wilson, Steel, Cook & Wolfe*, for defendants.

HUNSICKER, J. This is an action in mandamus, filed in this court to compel the issuance of a building permit for a home in the Mar-Well Estates Allotment, located in Twinsburg Township, Summit County, Ohio. The issues are presented in an amended petition and the answer thereto.

Gateway Quality Builders, Inc., one of the relators, is the owner of Lots 10, 11 and 12 in the Mar-Well Estates. It has built and nearly completed a house on lot 10, and a house on lot 12. In order to secure their building permits, Gateway Quality Builders, Inc., stated that one-half of the frontage of lot 11, amounting to 50 feet, and the whole of the other lots, was the land upon which the houses would be built. Lot 10 and lot 12 are designated as 100 foot frontage, thus making the lot frontage of these new homes 150 feet. This lot frontage of 150 feet complies with the zoning regulation for these lots in Mar-Well Estates.

Gateway Quality Builders, Inc., and Mar-Well, Inc., now wish to build a house on lot 11, which has a frontage of 100 feet. The zoning authorities have refused this permission, and relators, after pursuing their statutory remedies only, to the Board of Zoning Appeals of Twinsburg Township, filed in this court a mandamus action to compel the zoning authority of such township to issue a permit for a lot that does not conform to the present zoning regulations of the township.

The relators say that, to require a building lot to conform to the zoning restrictions set up for the area in which Mar-Well Estates is located, would result in great monetary loss to the relators, "and could be an application of unrealistic, confiscatory and retroactive legislation, to the" detriment of the relators. Relators also allege that the zoning regulations of the Township of Twinsburg, as they apply to the lands of the relators, "have no bearing to the public health, safety, morals or welfare, and therefore are unconstitutional as a violation of the 'due process' clauses of the" federal and Ohio Constitutions.

The invalidity of these zoning regulations is denied by the defendants, who allege to the contrary that they are a valid exercise of the police power granted to the township, and further say that relators have not exhausted their remedies at law, or their administrative remedies provided in the Revised Code of Ohio. They further admit that a permit to build a house on lot 11, the 100-foot frontage lot in the Mar-Well Estates Allotment, has been refused by the township authorities.

A long transcript of testimony, taken before a qualified person, together with a number of exhibits, is the evidence which this court has examined in the consideration of this case.

Mar-Well, Inc., owns a tract of land in Twinsburg Township, Summit County, Ohio, which was developed as an allotment. The plat of this allotment was approved on June 29, 1956, at a meeting of the Summit County Planning Commission, and signed by the officers of the Summit County Planning Commission on June 7, 1956. The signatures of approval by the Board of County Commissioners of Summit County, Ohio, were made on the plat on July 3, 1956, and the same day the plat was filed for record in the office of the county recorder, and thereafter recorded in volume 47, at pages 107 and 108, of the records of Summit County, Ohio.

Prior to 1956—to wit, May 1951—Twinsburg Township adopted a zoning resolution which, as amended, has been in effect in this township since the time it was approved by the electorate.

On September 10, 1956, at an adjourned meeting of the Board of Trustees of Twinsburg Township, the zoning resolution of such township was amended by establishing minimum lot areas and minimum lot widths for certain parts of the township. This amendment fixed, for the district covered by this allotment, a minimum lot area of 43,500 square feet, and a minimum lot width of 150 feet.

In the spring of 1956, Mar-Well, Inc., entered into a contract with a Mr. Breitenstine to put, in this allotment, roads, and to grade and gravel them, and to put in culvert pipes. He said he began this work in July or August, 1956, and completed the work in the fall of 1957. The total cost for these improvements was approximately $23,138, nearly all of which was paid by numerous checks dated from March 1, 1957, to March, 1958.

It is thus seen that the plat of this allotment was approved and filed for record before the change in zoning was adopted by the zoning board. Some work of grading, and improvement of a similar nature, was done before the zoning change, although most of this work was completed after the change in lot size and area.

There is some question raised as to the power to grant a permit to build on lot No. 11, inasmuch as that lot has been used in securing building permits along with lots 10 and 12. We do not believe it is necessary herein to discuss this phase of the case, even though it presents in our judgment a reason for the denial of the writ sought by this petition.

The testimony shows that the area of this allotment, due to the type of soil conditions, has poor leaching ability to absorb the water being discharged from septic tanks. There is no central sanitary sewage treatment plant in this allotment, and none available elsewhere, for the houses proposed to be built on these lands.

The plaintiff says that: the township does not have the right to change the minimum lot size and minimum lot width of this allotment after approval by the Summit County Planning Commission; by establishing a minimum lot width of 150 feet and a minimum lot area of 43,000 square feet for this allotment, the township is guilty of taking property without due process of law, in violation of the Constitution of the United States and the Constitution of the state of Ohio; the trustees of Twinsburg Township abused their discretion in establishing the zoning requirements for the Mar-Well Estates Allotment; the zoning restrictions, as adopted by the trustees of Twinsburg Township, are based upon a racial discrimination against Negroes; and, Mar-Well Estates Allotment, by virtue of the expenditure of funds and development of the land, is a nonconforming use of the land, in so far as the present zoning requirements are concerned.

At the outset of our consideration of this case, we must bear in mind that this is an original action in mandamus. The statute, Section 2731.01, Revised Code, defines mandamus as:

"* * * a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the per-

formance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

And Section 2731.03, Revised Code, says:

"The writ of mandamus may require an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, but it cannot control judicial discretion."

Mandamus is granted only in a clear case. It is a discretionary remedy, within the general rules laid down by the courts.

There is much confusion in applying the principles of the law of mandamus in zoning permit matters, because of what appears to be a conflict in the reported cases. In *State, ex rel. Iaus,* v. *Carlton et al., Mantua Twp. Trustees,* 168 Ohio St., 279, 154 N. E. (2d), 150, the court quoted with approval from *State, ex rel. Lieux,* v. *Village of Westlake,* 154 Ohio St., 412, 96 N. E. (2d), 414, as follows:

" 'An applicant for a building permit, whose application is refused because of the provisions of a zoning ordinance, cannot secure a writ of mandamus, compelling the issuance of such permit on the ground that the ordinance as a whole is unconstitutional, without first exhausting administrative remedies provided by such ordinance if such administrative remedies might enable such applicant to secure the permit.' "

There is the further pronouncement on the subject of zoning permits set out in *State, ex rel. Killeen Realty Co.,* v. *City of East Cleveland,* 169 Ohio St., 375, 160 N. E. (2d), 1. The situation in that case is not applicable to the case now before us.

We do not need to decide the instant case on the subject of the exhaustion of administrative remedies, although the relators herein did not go beyond the Board of Zoning Appeals.

We think it clear that, before an application for a use of premises is filed, the zoning requirements may be changed by the authority having the power to do so; and that, except within the limits fixed by the law, such changes are valid as to lands not then in use. *Gibson* v. *City of Oberlin,* 171 Ohio St., 1, 167 N. E. (2d), 651. The mere fact that an allotment plat is approved and recorded does not irrevocably fix the rights of the parties. Valid changes may thereafter be made in the zoning regulations, and the allotter must conform thereto. Zoning regulations since

the case of *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016, have prevented the free and unrestricted use of lands. *Smith* v. *Juillerat*, 161 Ohio St., 424, 119 N. E. (2d), 611.

We do not have herein a question of what this court would fix as the proper lot area and size, but our question is, Does the township zoning regulation, as fixed by the trustees after due and proper procedure, constitute a taking of property without due process of law, in violation of the state and federal Constitutions?

The testimony in this case is not such as to show a disregard for the elements of public health, safety, morals, or general welfare. The fact that the land has poor leaching qualities would indicate a relation to public health. The effect of these matters is for the legislative body to determine, and not for the courts, where the testimony is as we have in this case. The action of the trustees in adopting the zoning regulations is not such an act as to cause this court to intervene.

The case of *Curtiss* v. *City of Cleveland*, 170 Ohio St., 127, 163 N. E. (2d), 682, effectively stated the position of the courts in cases like the instant matter, when the court said:

"1. Even though legislation enacted pursuant to the police power makes unlawful what has theretofore been lawful and thereby decreases or even destroys the value of property which has been used in what has theretofore been a lawful undertaking, such legislation will not be considered invalid as a 'taking' of that property, within the meaning of constitutional limitations, where such legislation bears a real and substantial relation to the public health, safety, morals or general welfare and is not unreasonable or arbitrary.

"2. In enacting such legislation, a legislative body is presumed to have decided that such legislation does bear such a real and substantial relation and is not unreasonable or arbitrary.

"3. Whether such legislation bears such real and substantial relation and whether it is reasonable or arbitrary are questions committed in the first instance to the judgment and determination of the legislative body, and the decisions of such legislative body on those questions will not be disturbed unless they appear to be clearly erroneous."

There are no buildings on the lands of this allotment that do not conform to the requirements of the zoning law. The claim of nonconforming use is based on the assertion that, as soon as an allotment is platted, and such plat approved by the authorities, and funds are expended to improve the grade and to lay out streets, a use of the lands has occurred which causes it to be not subject to any zoning regulations adopted after the approval of the allotment plan.

The fallacy of this claim is so readily apparent that no lengthy discussion need be made. This proposal would prevent any changes in city planning, and fix a use that never could be amended. In addition, the claim of "use" would be based upon hope rather than upon occupancy and beneficial employment of the lands. The land in this allotment without houses did not become, by reason of the plat approval, a nonconforming use.

The word "use," according to Webster's New International Dictionary (Second Ed.), means: "1. Act of employing anything, or state of being employed; application; employment * * *."

In *Smith* v. *Juillerat, supra* (161 Ohio St., 424), the court said:

"4. Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property."

The legislation changing the zoning requirements of Twinsburg Township was in no sense retroactive legislation. There was no use to which the lands were being put at the time the zoning resolution was changed. Mar-Well Estates was an allotment on paper, without houses or other use. Of course, the change of the zoning requirements prevented the allotters from using the property in the manner contemplated by them, but all zoning laws are based upon the restrictive use of land.

It is therefore the judgment of this court that the writ of mandamus applied for herein must be denied.

*Writ denied.*

DOYLE, P. J., and STEVENS, J., concur.