[Civ. No. 21603.   First Dist., Div. Two.   Aug. 10, 1964.]

WILLIAM F. ANDERSON et al., Plaintiffs and Respondents, v. THE CITY COUNCIL OF THE CITY OF PLEAS-ANT HILL et al., Defendants and Appellants.

Charles J. Williams, City Attorney, for Defendants and Appellants.

Gordon B. Turner, Maurice E. Huguet, Jr., and Richard G. Logan for Plaintiffs and Respondents.

SHOEMAKER, P. J.—Plaintiffs William Anderson, Stanford Holmgren, Jack Looney and Harold Smith instituted this proceeding against defendants, The City Council of the City of Pleasant Hill, and its members, to obtain a peremptory writ of mandate compelling the issuance of a land use permit and a building permit to construct a gasoline service station.

On November 7, 1960, Smith entered into a written agreement to purchase a parcel of real property from Charles Benson for the sum of $30,000, subject to the express condition that Smith was able to have the property rezoned so as to allow the construction thereon of a gasoline service station. The property, located at the southeast corner of Grayson Road and Taylor Boulevard, was unincorporated territory within the County of Contra Costa. On March 21, 1961, the County Board of Supervisors rezoned the property "neighborhood business," which zoning allowed construction of the contemplated service station. Smith thereafter obtained title to the property by a grant deed which was recorded on March 24, 1961. The area immediately surrounding Smith's property continued to be zoned "residential" and "residential-agricultural."

Smith then applied to the county board of supervisors for permission to install an entrance into the proposed service station from Taylor Boulevard, a limited access county highway abutting the property. On August 8, 1961, a resolution granting such ingress to the property was duly adopted.

On November 14, 1961, the City of Pleasant Hill was incorporated and Smith's property was included within its boundaries. On December 26, 1961, the city council passed Ordinance No. 7 and thereby adopted and incorporated by reference the building regulations and planning and zoning provisions of Contra Costa County. This ordinance was expressly declared to be an urgency measure which would provide interim rules and regulations essential to the preservation of the public peace, health, safety and welfare until such time as the city could complete its own plans and studies.

Sometime prior to March 1962, Smith contacted Anderson, Holmgren and Looney and inquired whether they would be interested in investing in the proposed service station site. Before acting on this proposal, Anderson, Holmgren and Looney contacted certain officials in the county planning and public works departments and made inquiries relative to the zoning of the property. These officials, who were then also serving as the planning and public works staff for the newly incorporated City of Pleasant Hill, assured them that the city had retained the "neighborhood business" zoning for the property and that construction of a service station was still a permissible use. Upon receiving this assurance, Anderson, Holmgren and Looney each purchased an interest in the property.

The coowners of the property then commenced negotiations with various oil companies and ultimately arrived at a verbal understanding with Shell Oil Company whereby the property owners were to construct a service station in accordance with Shell's plans and specifications and then lease said facilities to Shell. A written lease was then drawn up by Shell and signed by the owners of the property. It was agreed by all the parties that Shell would sign the lease only upon the issuance of a building permit authorizing construction of the proposed service station.

During the period from July until mid-September 1962, Walton served in the dual capacity of City Manager and Planning Director for the City of Pleasant Hill. After familiarizing himself with the county zoning provisions under

which the city was then operating, Walton became convinced of the need for an additional interim ordinance which would enable the city to exercise greater control over commercial and business developments within its limits pending completion of the contemplated master plan. Sometime in September, Walton discussed this problem with Martin Maier, who was shortly to become the new city planning director. At a joint meeting of the city council and the planning commission held on September 20, 1962, Maier suggested that the adoption of an ordinance requiring land use permits might provide a satisfactory solution to this problem. He agreed to meet with the city attorney and attempt to draft such an ordinance. On September 24, 1962, Maier was appointed city planning director.

Meanwhile, in July and August 1962, representatives of the Shell Oil Company and of the four coowners of the proposed service station site met with various officials of the county public works department and attempted to obtain access to the property from Grayson Road as well as from Taylor Boulevard. Although Grayson Road was located within the City of Pleasant Hill, the county had reserved a 40-foot radius return at the intersection of Taylor Boulevard and Grayson Road in order to allow for the ultimate widening of Taylor Boulevard. Since the reservation of this county right of way left an extremely short frontage on Grayson Road, it was the hope of Shell and the property owners that the county would grant them permission to encroach into the reserved area in constructing a driveway from the property onto Grayson Road. The testimony as to whether such permission was ever granted was sharply conflicting. Knox, an employee of Shell, testified that Mr. Sauer, Mr. Cline and Mr. Kermit, all of whom were officials of the county public works department, had verbally agreed to allow an encroachment into the county right of way; Cline, the only one of these three named county officials who testified at the trial, emphatically denied that he or any other representative of the county public works department had ever made any such oral commitment on behalf of the county.

On October 9, 1962, Knox visited the Pleasant Hill city hall and discussed the development of the proposed service station site with the newly appointed city planning director, Maier, who indicated that he did not consider the Taylor-Grayson intersection a desirable location for a service station, and, in

addition, that he would not recommend to the city that it approve any encroachment into the county right of way. He also questioned the propriety of the county's having zoned the property "neighborhood business" and indicated that the property owners might have obtained such zoning through the use of undue influence upon the county authorities. As a result of this conversation, Knox became convinced that Shell should complete the plans and specifications for the service station and apply for a building permit as soon as possible.

Thereafter, on October 11, 1962, three of the coowners of the property visited the city hall and asked Maier to furnish them with an application for a building permit. The property owners had brought with them plot plans, plans and specifications for a "typical" Shell service station, a copy of the county resolution granting them ingress to the property from Taylor Boulevard, and a check with which to pay any filing fee which might be required by the city. The plot plan was drawn in such a manner as to require the issuance of a variance under the city zoning ordinance, since the light standards, gasoline pump islands, and signs were located so as to violate the setback requirements applicable to "neighborhood business" zones. In addition, the plot plan provided for construction of a driveway into Grayson Road within the county right of way. After Maier had examined the plot plan, the property owners asked him to endorse a building permit application so as to indicate that the present zoning of the property allowed the construction of a service station; Maier stated that he would not endorse the application until he had had an opportunity to check with the county authorities and ascertain whether they had in fact given their oral consent to the driveway encroachment. After Maier had made an unsuccessful attempt to reach Cline by telephone, he offered to meet with the property owners and the officials of the county public works department early in the next week and resolve the Grayson encroachment problem at that time. The property owners agreed to have Maier arrange such a meeting. They then departed, leaving the plot plan only with Maier.

On the following day, October 12, Maier met with the city attorney, and the two men drafted Ordinance No. 49. This ordinance amended Ordinance No. 7 in such a manner as to require that a land use permit be obtained for each new use of property within a neighborhood business district, a retail

business district, a general commercial district, a controlled manufacturing district, and a multiple family residential district. This ordinance was expressly declared to be an urgency measure designed to preserve the public peace, health, safety and welfare. The facts constituting the urgency were set forth as follows: ''without the regulation contained in this ordinance it is believed that land uses may take place in a manner contrary to the general welfare of the City through commingling of incompatible uses, and inability of the City to impose parking and loading standards necessary to relieve congestion and to promote safety; the City's General Plan now under preparation could be drastically affected and rendered useless and the orderly completion of plans and studies may be prevented.'' On October 15, 1962, Ordinance No. 49 was unanimously adopted by the city council.

On October 19, Smith telephoned Maier and asked what arrangements had been made for the meeting with the county public works officials. An appointment with Cline was then made for October 24. On that date, Maier informed the property owners that Ordinance No. 49 had been adopted by the City of Pleasant Hill and that they would be required to obtain a land use permit prior to applying for a building permit.

On November 15, 1962, the property owners' application for a land use permit to construct a service station was heard by the Pleasant Hill planning commission and was granted subject to certain specified conditions. A neighboring property owner by the name of Zacharin then appealed the order granting said permit to the city council. This appeal was heard by the city council on December 10, 1962, and again on February 4, 1963. At the second hearing, Zacharin, whose appeal was apparently based upon the ground that construction of the proposed service station would create traffic problems at the Grayson-Taylor intersection, withdrew his appeal for the reason that he had arranged to sell certain adjacent property to the coowners of the service station site and now felt that the traffic problems had been alleviated. The city council nevertheless voted to deny the land use permit.

There was evidence that the property owners had spent many hours negotiating the leasehold agreement with Shell Oil Company, arranging to borrow funds to finance the proposed construction and otherwise endeavoring to develop the property as a service station site, and that they had incurred some $500 in actual costs connected with said development.

There was also evidence that the property was worth $50,000 as a service station site and only $10,000 in the event such use were prohibited.

At the conclusion of the trial, the court found generally as we have recounted hereinabove and made its conclusions of law as follows: that on October 11, 1962, when plaintiffs' application for a building permit was refused, plaintiffs were entitled as a matter of law to the issuance of a permit to construct a service station under the existing laws, ordinances and regulations of the City of Pleasant Hill; that the city officials were guilty of oppressive and unfair conduct in denying plaintiffs a building permit and were also guilty of oppressive, unfair and unreasonable conduct in thwarting and preventing plaintiffs from obtaining said permit to which they were legally entitled; that Ordinance No. 49 was unreasonable, discriminatory, confiscatory, unconstitutional and void as applied to plaintiffs' property, and there was no valid basis for the exercise of the city's police power in adopting said ordinance as it applied to plaintiffs' property; that plaintiffs had acquired a vested right to construct a service station on their property prior to the adoption of Ordinance No. 49, and the city and its representatives were therefore estopped from requiring that plaintiffs obtain a land use permit prior to applying for a building permit; that the action of the city council in denying plaintiffs a land use permit on February 4, 1963 was null, void, and of no legal effect whatever for the reason that the zoning and land use ordinances (No. 7 and all amendments thereto, including No. 49) under which the city council was acting had expired on or about December 26, 1962, and were not renewed until March 11, 1963; that plaintiffs were therefore entitled to a peremptory writ of mandate compelling the city to grant them a building permit to construct a service station on their property in accordance with the plans and specifications submitted to the city planning commission and subject to the conditions imposed by said commission.

Judgment was accordingly entered granting plaintiffs a peremptory writ of mandate compelling the issuance of a building permit authorizing construction of a service station in accord with the conditions above specified. From this judgment, defendants filed notice of appeal.

Appellants contend that there was no evidentiary support for (1) the court's determination that respondents were

legally entitled to the issuance of a building permit on October 11, 1962, and that the denial of said permit was arbitrary; (2) that respondents had acquired a vested right to develop their property as a service station site prior to the adoption of Ordinance No. 49; and (3) that Ordinance No. 49 was unconstitutional, unreasonable and void as applied to respondents. Appellants also assert that the court erred in ruling that the question whether a property owner has acquired a vested right to use his property in a certain manner is a question of law rather than of fact, and that the court erred in admitting and excluding certain evidence.

Taking these contentions in order, we are satisfied that the evidence does not support the court's ruling that respondents were entitled to the issuance of a building permit as a matter of right on October 11, 1962, and that the denial of same was therefore arbitrary. To the contrary, the uncontroverted evidence establishes that the plot plan submitted by respondents showed on its face that the gasoline pump islands, light standards, and signs to be erected in the proposed service station were located in such a manner as to require the issuance of a variance under the applicable setback requirements of the city. In addition, respondents' plot plan also revealed that the Grayson driveway was to be located so as to encroach within the county right of way. The building permit application form used by the city specifically provided that ''This Permit does NOT INCLUDE any construction within the Public Right of Way. Permit for such construction shall be obtained from the Contra Costa County Public Works Department.'' Under such circumstances, it was reasonable for the city planning director to refuse to endorse the application until he had had an opportunity to check with the county authorities and ascertain whether respondents had in fact obtained their consent to the proposed encroachment. In any event, even if the city planning director had endorsed the form, respondents would have been entitled to issuance of a building permit only upon the granting of a variance from the applicable setback requirements. Seedborg, the Shell employee who drew respondents' plot plan, admitted that a building permit could not be issued prior to the granting of a variance and that the denial of such variance might well have forced respondents to alter the entire layout of the service station.

Under such circumstances, *McCombs* v. *Larson* (1959) 176

Cal.App.2d 105, 107-108 [1 Cal.Rptr. 140], and *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543, 551-552 [314 P.2d 67], upon which respondents rely, are inapplicable. Both decisions are authority only for the proposition that where the legal requirements for the issuance of a building permit have been complied with, the issuance of the permit becomes a ministerial act the performance of which may be compelled by the mandate of the court. In the present case, compliance with such legal requirements was conspicuously absent.

Appellants assert that there was no evidentiary support for the court's ruling that the application of Ordinance No. 49 to respondents' property deprived them of a vested right to construct a service station. We agree.

In the present case, the trial court's determination that respondents had acquired a vested right to construct a service station on their property was based upon the evidence that respondents had purchased the property in reliance on the existing zoning and had thereafter expended some $500 and devoted many hours, valued at $2,500, in attempting to secure a leasing arrangement with an oil company and in otherwise preparing to develop their property as a service station site. The court expressly found that all of these acts were performed prior to October 11, 1962, the date on which respondents sought to obtain a building permit. It is settled that a property owner acquires no vested right, as against future zoning, merely by purchasing real property. (*O'Rourke* v. *Teeters* (1944) 63 Cal.App.2d 349, 352 [146 P.2d 983]; *Price* v. *Schwafel* (1949) 92 Cal.App.2d 77, 82-85 [206 P.2d 683].) Although the relevant authorities do establish that a property owner who has acquired a building permit and has legally undertaken the construction of a building before the effective date of a zoning ordinance has acquired a vested right to complete the building and use it for the purpose intended (*Trans-Oceanic Oil Corp.* v. *City of Santa Barbara* (1948) 85 Cal.App.2d 776, 794 [194 P.2d 148]; *Griffin* v. *County of Marin* (1958) 157 Cal.App.2d 507, 513 [321 P.2d 148]), it is the rule that ''The activity of the owner in the use of his property at the time it becomes subject to a zoning ordinance and not his plans regarding the future use of that property determines the scope of the nonconforming use excepted from the restrictions imposed by the ordinance.'' (*Paramount Rock Co.* v. *County of San Diego* (1960) 180 Cal.App.2d 217, 232 [4 Cal.Rptr. 317].) The property

owner acquires a vested right to continue a use "actually instituted," not to capitalize upon anticipated profit. (*Jones* v. *City of Los Angeles* (1930) 211 Cal. 304 [295 P. 14]; *Willett & Crane, Inc.* v. *City of Palos Verdes etc. Estates* (1950) 96 Cal.App.2d 757, 761 [216 P.2d 85].) Moreover, respondents have been unable to cite a single California decision in which a property owner has been held to have acquired a vested right against future zoning without having first acquired a *building permit* to construct a specific type of building and having *thereafter* expended a considerable sum in reliance upon said permit. Such authority would appear nonexistent for the reason that the vested rights theory is predicated upon estoppel of the governing body. ▉ Where a building permit to erect a specific type of building is issued by a county or city and the permittee acts upon it and incurs obligations, or in good faith commences construction, his rights become vested and the governmental body is thereafter estopped to set up a zoning ordinance subsequently enacted. (*Price* v. *Schwafel, supra.*) Where no such permit has been issued, it is difficult to conceive of any basis for such estoppel. ▉ In *Brougher* v. *Board of Public Works* (1928) 205 Cal. 426, 434 [271 P. 487], the court stated, "The exception noted in the foregoing authorities that a permit would not be revoked in those cases where the licensee 'had done something under the license from which the mere privilege would ripen into a vested right,' does not exist in those cases like the one before us, where no permit has ever been issued. In such cases there is no opportunity for any privilege to ripen into a vested right, for the reason that no privilege, in the sense used in the authorities cited, is acquired until a permit has been issued." ▉ In *Jones* v. *City of Los Angeles, supra,* at pages 311-312, the court held that a property owner had acquired vested rights in the present zoning because " 'the public officials representing the people cannot legally be permitted to change the zoning law and cancel a permit previously issued under the original zoning act, where an innocent purchaser of real estate has in good faith acted upon such official action of the city, and has thereby acquired vested rights under his permit. . . .' " In *Trans-Oceanic Oil Corp.* v. *City of Santa Barbara, supra,* at pages 793-794, the court quoted at length from the *Brougher* case and then went on to hold that the property owner had acquired a vested right by reason of the fact that he had engaged in substantial build-

ing and incurred expenses in connection therewith "in reliance upon a permit duly and regularly issued." In *Griffin* v. *County of Marin, supra,* the property owner had obtained a building permit and had employed contractors to clean and level the area in reliance thereon. The court held that "The trial court was justified in finding that these expenses had been incurred in good faith reliance *on the permit* and that respondents' rights had therefore vested. Whether the work had progressed to a point sufficient to warrant the estoppel was a trial court question." (Pp. 513-514; italics added.)

These authorities establish the rule that respondents did not acquire a vested right, as against future zoning, merely by purchasing the property in reliance on the existing zoning and thereafter making certain endeavors to develop it for a specified use. Since all of these acts were performed prior to the date upon which respondents sought to obtain a building permit, they could not have been performed in reliance on the required official action, or the granting of a license or privilege, by the city. It follows that respondents never acquired any privilege which could ripen into a vested right and that the court erred in holding that the city was estopped from rezoning respondents' property.

The next question to be determined is whether the trial court was correct in holding that Ordinance No. 49 was unconstitutional as applied to respondents' property for the reason that it was not a valid exercise of the police power and was adopted for the primary purpose of thwarting respondents' plans to use their property for a specific purpose which was in no way detrimental to the health, safety and welfare of the community. Here again, appellants, in asserting that this finding was without support in the record, must be sustained. Ordinance No. 49, as above noted, was not applicable solely to "neighborhood business" districts, but was also applicable to retail business districts, general commercial districts, controlled manufacturing districts, and multiple family residential districts. The ordinance was expressly declared to be an urgency measure designed to prevent the commingling of incompatible uses, to enable the city to impose parking and loading standards necessary to relieve congestion and to promote safety, and to preserve the status quo until such time as the city should be able to complete its own plans and studies. There was uncontradicted testimony that a general land use ordinance of this nature had been under consideration by

various city officials prior to the date on which respondents attempted to obtain a building permit and also prior to the date on which Mr. Knox first apprised the city planning director, Mr. Maier, of respondents' plans to construct a service station.

It is settled that every intendment is in favor of the action of the legislative authority, which will not be overthrown in the absence of physical facts requiring the conclusion that the ordinance is unreasonable and invalid as a matter of law. (*Robinson* v. *City of Los Angeles* (1956) 146 Cal.App.2d 810, 815-816 [304 P.2d 814].) If reasonable minds might differ upon the question of whether the zoning is required by or consistent with the public welfare, the court may not interfere. (*Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 339 [175 P.2d 542].) It is also the rule that the motives of the legislative body may not be weighed in measuring the legality of their action. (*McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 894 [264 P.2d 932]; *Ferris* v. *City of Alhambra* (1961) 189 Cal.App. 2d 517, 525 [11 Cal.Rptr. 475].)

In the present case, respondents have not directed this court's attention to any physical fact demonstrating that Ordinance No. 49 was unreasonable or invalid either as a whole or in its application to their property. It must be remembered that the ordinance did not prohibit any one specific use to which a particular parcel of property might be put, but merely provided a means by which new uses in certain designated districts could be made subject to the prior approval of the planning commission. Although respondents assert that the evidence that Maier was opposed to their construction plans was sufficient to support the finding that Ordinance No. 49 was adopted for the primary purpose of prohibiting the proposed service station, the record contains no evidence that Maier's views were shared by the members of appellant city council. Moreover, any such motive, as above noted, could not be weighed in measuring the legality of the ordinance. Once the evidence of Maier's allegedly discriminatory attitude toward respondents is removed from consideration, it becomes apparent that the only evidence tending to indicate that Ordinance No. 49 was not a proper exercise of the police power consists of the bare fact that said ordinance was passed within a relatively short time after respondents attempted to obtain a building permit to which they were not

then legally entitled. This evidence would appear of little or no value in the face of the broad scope of the ordinance itself, the declaration of purpose contained therein, and the fact that the ordinance had been under official consideration at a time when the city was unaware of respondents' construction plans. It is for this reason that *Sunset View Cemetery Assn.* v. *Kraintz* (1961) 196 Cal.App.2d 115 [16 Cal.Rptr. 317], relied upon by respondents, is inapplicable. The record is utterly devoid of any evidence tending to show that there was no genuine need for an urgency ordinance requiring the approval by the planning commission of new uses within the districts made subject to Ordinance No. 49. In considering the applicability of such an ordinance to respondents' property, it is not amiss to note that it would be far from unreasonable to conclude that the public welfare would benefit by prohibiting construction of a service station in a neighborhood zoned residential and residential-agricultural (with the exception of respondents' property) and devoted primarily to single-family dwellings. Under such circumstances, the court's holding that the ordinance did not constitute a valid exercise of the police power and that it was unreasonable, discriminatory, confiscatory, and unconstitutional as applied to respondents, constitutes an unwarranted substitution of the court's judgment for that of the legislative authority of the city.

In the light of the foregoing, it becomes unnecessary to discuss appellants' contention that the court erred in certain of its procedural rulings.

The sole question remaining is whether the court was correct in determining that Ordinance No. 7 and all amendments thereto (including Ordinance No. 49) expired on December 26, 1962, and if so, what effect such expiration had on the rights of the parties. Respondents contend that Ordinance No. 7, since expressly declared to be an urgency measure, must have been adopted pursuant to Government Code, section 65806, which provides for the adoption as an urgency measure of a temporary interim zoning ordinance pending completion of studies preparatory to the adoption of a zoning ordinance. Section 65806 provides in relevant part that "Such temporary zoning ordinance shall be of no further force and effect one year from the date of adoption thereof; provided, however, that after notice pursuant to section 6061, and public hearing, the legislative body may by a four-fifths vote extend such temporary ordinance for one year. No more than two such

extensions may be adopted. When such temporary zoning ordinance has been adopted, every subsequent ordinance adopted pursuant to this section, covering the whole or a part of the same property, shall automatically terminate and be of no further force or effect one year after the date of the adoption of the first such ordinance."

Respondents assert that Ordinance No. 7 and its amendments, since not renewed until March 11, 1963, automatically expired, pursuant to section 65806, on December 26, 1962, one year after the date of its adoption.

Appellants, apparently conceding the truth of this assertion, attempt to meet it only by alleging that this point may not be considered on appeal because it was not raised in respondents' pleadings and because the trial court made no finding on it. This peculiar statement can be explained only by indulging in the assumption that appellants' counsel has had no opportunity to read either the clerk's transcript or the reporter's transcript. The trial court, as above noted, covered the expiration of Ordinance No. 7 and its amendments both in its findings and conclusions of law. Although respondents' original petition made no mention of the point (and, in fact, alleged that "Ordinance No. 7 has never been rescinded or repealed and is now in full force and effect, except as otherwise amended by Emergency Ordinance No. 49"), respondents filed a proposed amendment raising the expiration issue on April 1, 1963, and, on April 19, 1963, the first day of trial, requested leave to so amend the petition. Although the trial court reserved its ruling at that time, permission to amend to proof was subsequently granted.

The question remaining is what, if any, was the effect of the expiration of Ordinance No. 7 and its amendments on the rights of the parties? In order to resolve this question, it must be noted that on December 26, 1962, the date on which said expiration occurred, respondents had been granted a use permit by the planning commission, the matter had been appealed to the city council, and said body had conducted one hearing and continued the matter until February 4, 1963. On that date, when the council overruled the planning commission and voted to deny respondents a land use permit, Ordinance No. 7 and its amendments had expired. It follows that appellant city council was without legal authority to require a land use permit or, for that matter, to require a build-

ing permit or otherwise assert any control over zoning and construction within the city limits. It does not follow, however, that the council was then without legal authority to review the action of the planning commission, which action was taken at a time when Ordinance No. 49 was still in effect. Although it would appear that the council ought properly to have dismissed the appeal as moot for the reason that a use permit was no longer required, such a disposition of the appeal would not have established in respondents any present affirmative right to the issuance of either a land use permit or a building permit to construct a service station on their property. It would therefore appear that the expiration of Ordinance No. 7 and its amendments has no bearing on the issues raised by this appeal.

The judgment is reversed, with directions to the trial court to deny the application for a peremptory writ of mandate.

Agee, J., and Taylor, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 7, 1964. Peters, J., was of the opinion that the petition should be granted.