473 P.2d 797

The PHOENIX CITY COUNCIL, a municipal corporation, Mayor Milton H. Graham, Frank G. Benites, Charles Case, John F. Long, Milton G. Sanders, Mrs. Dorothy Theilkas, Dr. Morrison F. Warren, the City Planning Department, the Board of Appeals for Signs, and the Building Official, Appellants,

v.

CANYON FORD, INC., a Delaware corporation, Appellee.

No. 1 CA-CIV 1269.

Court of Appeals of Arizona, Division 1.

Aug. 27, 1970.

596

Robert J. Backstein, City Atty., by
Edward P. Reeder, Asst. City Atty.,
Phoenix, for appellants.

Brown, Vlassis & Bain, by Bruce E. Babbitt, Phoenix, for appellee.

HOWARD, Chief Judge.

The issue in this case is whether or not a sign being manufactured in Tennessee is a nonconforming use.

In 1967 the appellee, hereinafter referred to as Canyon Ford, began construction of the facilities for a new Ford dealership in Phoenix, Arizona, In September of 1967 the building was completed but certain signs had yet to be erected on the main building. On September 13, 1967, Canyon Ford entered into a contract with Ford Motor Company wherein the Ford Motor Company was to provide it with four identical 5′ x 30′ signs. The total contract price for the signs was $4,689.00. The contract was forwarded to a sign fabricator in Nashville, Tennessee. During this time there were no size restrictions on signs in areas zoned C–3.

On November 28, 1967, the Arizona contractor who was to erect the signs on the building applied for and received a sign permit for two signs only. All four signs were in the process of being fabricated at that time.

The Phoenix City Council, on December 27, 1967, passed Ordinance No. G–381 regulating the erection, construction and use of signs. This ordinance imposes size limits on signs in areas zoned C–3 and became effective on January 26, 1968.

The two signs for which a permit was secured were erected and the building inspector "cleared" the work as being properly finished on February 16, 1968. Complete fabrication of the remaining two signs was accomplished in May of 1968 and Canyon Ford then applied for a permit to erect these two signs on the premises. The building inspector refused to issue a permit since the request exceeded the maximum size area authorized by the new ordinance. The Board of Sign Appeals denied Canyon Ford's request upon the following recommendation of the City Planning Department staff:

"The subject business already has 768 sq. ft. of sign area, and now proposes to increase that figure by another 300 sq. ft., for a total area of more than two and one-half times the maximum area permitted.

"The size and location of the existing signs are such that the business appears to be more than adequately identified to persons driving in any direction on the adjoining streets.

"RECOMMENDATION:

"There is no property hardship which would necessitate more sign area to properly identify this business and the request is therefore recommended for denial."

This decision by the Board of Appeals for Signs was appealed to the City Council which, on September 4, 1968, upheld the decision of the Board.

The Superior Court, on certiorari, ordered that the City issue permits allowing erection of the two signs in question, and the City appealed.

Canyon Ford's contention in the trial court was two-fold: (1) The application of the new sign ordinance was unconstitutional as to it since the City cannot lawfully regulate the fabrication of a sign in Tennessee and (2) the signs met every requirement of the law as it existed when they were being constructed and therefore it was entitled to a permit.

On appeal Canyon Ford has abandoned its first contention and now defends the action of the trial court upon the grounds that it had a vested right to erect the signs. This contention is disputed by appellant.

The new ordinance contains the following provision:

"A. Nonconforming signs.

"Any sign erected or constructed prior to the enactment of this ordinance, or any sign subject to the provisions of this ordinance by reason of annexation into the City of Phoenix, which sign was erected or constructed in conformity with all pertinent ordinances or codes

governing such erection or construction at the time of such erection or construction but which sign erection or construction does not conform to the requirements of this ordinance, shall be a 'nonconforming' sign and *may be continued in use and maintained* for a reasonable period to amortize the investment therein; except as set forth in paragraphs 1 through 4 of this subsection." (Emphasis added)

Also of importance is the following provision of the Building Code:

"1500.1 APPLICATION AND PERMITS FOR SIGNS.

"No sign subject to the provisions of this Code *shall be erected until a permit for same shall have been issued* by the Building Official for such erection. The application for such permits, the fees to be charged, and the issuance of such permits shall conform to the requirements of Part 2 of this Code, the same as is required for any other building or structure, except: * * *." (Emphasis added)

## CONSTRUCTION OF NONCONFORMING USE PROVISIONS

■ Provisions are inserted in ordinances allowing the continuation of a nonconforming use because of the injustice and doubtful constitutionality of compelling immediate discontinuance of the nonconforming use. Orange County v. Goldring, 121 Cal.App.2d 442, 263 P.2d 321 (1953); Rehfeld et ux. v. City and County of San Francisco, 218 Cal. 83, 84, 21 P.2d 419 (1933).

■■ Zoning ordinances, being in derogation of common law property rights, will be strictly construed and any ambiguity or uncertainty decided in favor of the property owner. Kubby v. Hammond, 68

Ariz. 17, 198 P.2d 134 (1948).[1] In construing the language of the nonconforming use provision Canyon Ford contends that its signs constituted a nonconforming use under the ordinance since its signs were being "constructed" prior to the enactment of the ordinance. We do not agree. The words "erect" and "construct" are synonymous. State of Montana ex rel. Morgan, Relator v. State Board of Examiners, 131 Mont. 188, 309 P.2d 336 (1957); State ex rel. Davis v. Barber, 139 Fla. 706, 190 So. 809 (1939); State ex rel. City of Chillicothe v. Gordon, 233 Mo. 383, 135 S.W. 929 (1911); Butz v. Murch Bros. Const. Co., 199 Mo. 279, 97 S.W. 895 (1906). Section 1501 of the Building Code defines the word "erect" as applied to a sign shall mean to build, construct, attach, hang, place, suspend, or affix *at the place of display*. Since the ordinance provides that "any sign erected or constructed prior to the enactment * * * *may be continued in use* and maintained." (Emphasis added). We believe that the word "construct" is synonymous with the definition of "erect" as heretofore set forth in the Building Code.

■ The nonconforming sign provisions at issue follow the general rule as set forth in Kubby v. Hammond, supra; that nonconforming buildings and uses existing when an ordinance goes into effect are allowed to continue. The employment of the concept of "use" in the provisions of the ordinance is important since where no substantial nonconforming use is made of the property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation if a valid zoning ordinance denies the right to proceed with his intended use. State ex rel. Mar-Well, Inc. v. Dodge, 113 Ohio App. 118, 177 N.E.2d 515 (1960).

1. Compare with the following language of Justice Struckmeyer in his dissent in Mueller v. City of Phoenix, 102 Ariz. 575, 435 P.2d 472 (1967) : "* * * *the spirit underlying zoning is to restrict rather* *than to increase nonconforming uses*. To that end it has been held by the most respected courts in the country that nonconforming uses are to be eliminated as rapidly as possible * * *."

■ "Intended use" is not the test. As the court said in Anderson v. City Council of City of Pleasant Hill, 229 Cal.App.2d 79, 88, 40 Cal.Rptr. 41, 47 (1964):

> "'The activity of the owner in the use of his property at the time it becomes subject to a zoning ordinance and not his plans regarding the future use of that property determines the scope of the nonconforming use excepted from the restrictions imposed by the ordinance.'"

Paramount Rock Co. v. County of San Diego, 180 Cal.App.2d 217, 232, 4 Cal. Rptr. 317, 327 (1960); Jones v. City of Los Angeles, 211 Cal. 304, 295 P. 14 (1930); Willett & Crane, Inc. v. City of Palos Verdes Estates, 96 Cal.App.2d 757, 761, 216 P.2d 85 (1950); Spindler Realty Corporation v. Monning, 243 Cal.App.2d 255, 53 Cal.Rptr. 7 (1966).

■■ The word "use" means the act of employing anything, or state of being employed; application; employment. State v. Dodge, supra. It is obvious that the signs were not being "used" at the time the new ordinance was passed. But, this does not end the discussion since, there is an exception to the requirement of "use." This exception is the "vested rights theory" which is based upon an *estoppel.* Justice Traynor in San Diego County v. McClurken, 37 Cal.2d 683, 234 P.2d 972 (1951) has ably set forth the exceptions. He first stated:

> "* * * If an owner has *legally* undertaken the construction of a building before the effective date of a zoning ordinance, he may complete the building

and use it for the purpose designed after the effective date of the ordinance (citations omitted). Protection of an undertaking involving the investment of capital, the purchase of equipment, and the employment of workers, is akin to protection of a nonconforming use existing at the time that zoning restrictions became effective." [emphasis added]

At first blush this statement would seem to support the position of Canyon Ford since it argues that the ordinance does not forbid the fabrication of a sign and therefore all of its efforts were legally undertaken. However, the authority cited by Justice Traynor for this proposition makes it clear that this rule operates only when a valid permit has been issued and construction is commenced in reliance thereon, or, in those situations where there is actual construction begun on the land and it is the type of construction for which *no permit is ever required* at anytime before, during or after.

■ The second rule mentioned by Justice Traynor is this:

> "* * * a permittee who has expended sustantial [sic] sums under a permit cannot be deprived by a subsequent zoning ordinance of the right to complete construction and to use the premises as authorized by the permit. * * *"[2]

The estoppel basis of both of these rules cited by the Court in San Diego County v. McClurken, supra, is well set forth in two California cases, Anderson v. City Council of City of Pleasant Hill, 229 Cal.App.2d 79,

---

2. Accord: Verner v. Redman, 77 Ariz. 310, 271 P.2d 468 (1954); Riverdale Community Planning Assn. v. Crinnion, Sup., 133 N.Y.S.2d 706 (1954), affirmed 285 App.Div. 1047, 141 N.Y.S.2d 510, appeal dismissed 1 N.Y.2d 689, 150 N.Y.S.2d 616, 133 N.E.2d 839; Herskovits v. Irwin, 299 Pa. 155, 149 A. 195 (1930); City of Buffalo v. Chadeayne, 134 N.Y. 163, 165–166, 31 N.E. 443, 444 (1892); People ex rel. Ortenberg v. Bales, 224 App.Div. 87, 229 N.Y.S. 550 (1928), affirmed 250 N.Y. 598, 166 N.E. 339; Caponi v. Walsh, 228 App.Div. 86, 89, 238 N.Y.S. 438, 441;

Pelham View Apts. v. Switzer, 130 Misc. 545, 224 N.Y.S. 56; Glenel Realty Corp. v. Worthington, 4 A.D.2d 702, 164 N.Y.S. 2d 635 (1957); In re Appeal of Rose Builders' Supply Co., 202 N.C. 496, 163 S.E. 462, 463; Winn v. Lamoy Realty Corp., 100 N.H. 280, 124 A.2d 211, 212 (1956). But the permittee must secure the permit and incur the expenses and liabilities in good faith. City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923 (1928); Stowe v. Burke, 255 N.C. 527, 122 S.E.2d 374 (1961).

40 Cal.Rptr. 41 (1964) and Spindler Realty Corporation v. Monning, supra.

In *Anderson* the court said: "Where a building permit to erect a specific type of building is issued by a county or city and the permittee acts upon it and incurs obligations, or in good faith commences construction, his rights become vested and the governmental body is thereafter estopped to set up a zoning ordinance subsequently enacted. (Price v. Schwafel, supra, [92 Cal. App.2d 77, 206 P.2d 683 (1949)].) Where no such permit has been issued, it is difficult to conceive of any basis for such estoppel. * * * These authorities [Brougher v. Board of Public Works of City & County of San Francisco, 205 Cal. 426, 271 P. 487 (1928); Jones v. City of Los Angeles, 211 Cal. 304, 295 P. 14 (1930); Trans-Oceanic Oil Corp. v. City of Santa Barbara, 85 Cal.App.2d 776, 194 P.2d 148 (1948); Griffin v. County of Marin, 157 Cal.App.2d 507, 321 P.2d 148 (1958)] establish the rule that respondents did not acquire a vested right, as against future zoning, merely by purchasing the property in reliance on the existing zoning and thereafter making certain endeavors to develop it for a specific use. Since all of these acts were performed prior to the date upon which respondents sought to obtain a building permit, they could not have been performed in reliance on the required official action, or the granting of a license or privilege, by the city. It follows that respondents never acquired any privilege which could ripen into a vested right and that the court erred in holding that the city was estopped from rezoning respondents' property."

In *Spindler* the court quoted the *Anderson* case with approval. Petitioner in *Spindler* conceded that he had no building permit but contended, as does Canyon Ford, that his vested right was established because it relied in good faith on the existence and continuation of the proper zoning and had incurred substantial obligations. The court in *Spindler* rejected this argument quoting from City of Tucson v. Arizona Mortuary, supra, wherein the court stated that the imperative necessity for the existence of the police power precludes any limitations upon it when not exercised arbitrarily and further held that "a vested interest cannot be asserted against it because of conditions once obtaining."

In this case, as in *Spindler* and *Anderson* there can be no estoppel because Canyon Ford did not acquire a vested right as against a future change in the sign ordinance by entering into a contract for the construction of the signs in reliance on the then existing sign ordinance. Since the contract to fabricate the signs was entered into a work begun thereon prior to the date upon which Canyon Ford sought to obtain a sign permit, such incurring of liability and commencement of construction could not have been in reliance of any permit or privilege by the City. We have found no cases where a permit is required which held that a vested right accrues prior to the issuance of a permit, or at least an application[3] for one. It follows that Canyon Ford never acquired any privilege which could ripen into a vested right.

For the foregoing reasons the order of the lower court is set aside and the trial court is directed to enter a dismissal of the Petition for Writ of Certiorari.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

3. See Deer Park Civic Ass'n v. City of Chicago, 347 Ill.App. 346, 106 N.E.2d 823 (1952).