Eager, J.
This action is brought by the building inspector of the Village of Larchmont for an injunction restraining the use or renting out by the defendants of an accessory building situate in a residential district for occupancy or residence by an independent family separate from the occupancy of the main house on the premises. It appears that the defendants Reville (herein referred to as the “ defendants ”) in April, 1954, acquired and now own the premises in question, being a lot known as 90 Larchmont Avenue in said village. There is located upon the lot a large dwelling house, containing approximately sixteen rooms and six baths and also a second building, the subject of this action (hereinafter referred to as the “ subject building ”), which consists of two floors, the first of which contains garage space, a hobby shop and a game room and the second of which is used as a six-room one-family apartment. The buildings were built at the same time (about fifty years ago), and it appears that, from 1939 until April, 1954, the owner of the premises, residing thereon, used the first floor of the subject building for the housing of her automobiles and as a hobby shop and game room in connection with the main residence, and that the second floor thereof was occupied by the owner’s chauffeur for his residence.
The defendants purchased the premises in April, 1954, and thereupon they offered the apartment over the garage for independent family occupancy on a rental basis. Finally, the apartment was rented to one Walter McTeigue and wife, who were made defendants to this action but who were not served and, since the renting, they have occupied and now occupy the premises as tenants. Their occupancy is alleged to be a violation of the local zoning ordinance.
The premises in question have, since 1932, been classified as in a residence district. By ordinance provisions in effect from 1932 until June, 1947, it was provided that, in such a district, accessory private garage buildings may be erected on the same *1047 lot with the main building subject to garage occupancy restricted on the first floor and that, “ The upper floor of such accessory building shall not be used for resident purposes except for a gardener, chauffeur or household servants employed for the main building on same lot or plot with accessory building.”
A revised zoning ordinance was adopted in June, 1947. This ordinance also classified the premises as in a residence district and provided that, in such a district, ‘ ‘ No upper floor of any detached garage building shall be used for any other purpose than as a dwelling for gardener, chauffeur or household servant employed in the principal building to which the same is accessory ”.
The 1947 zoning ordinance was superseded by a new zoning ordinance effective February 1, 1954. This 1954 ordinance was in effect when the defendants purchased the subject premises, and such ordinance locates the same in the “ B-10 ” district, which is set aside for one-family dwelling use providing for a minimum lot area of 10,000 square feet “ per family ”. Under the provisions of such ordinance, residential occupancy is not permitted in accessory buildings. There are, however, provisions in the 1954 ordinance for continuance of existing nonconforming uses subject to certain conditions, and, in this connection, it is specifically provided that, “ No such nonconforming use, if discontinued for six months or longer, shall be resumed.”
The material facts are virtually undisputed. Clearly, the tenants McTeigue who occupy the apartment on the second floor of the subject building have no family relationship with the defendants Neville who occupy the main residence. Nor is Mr. McTeigue or his wife employed by said defendants as a gardener, chauffeur or household servant. The said apartment is, therefore, occupied by an independent family for residential purposes, and has been so occupied for upwards of six months.
Zoning ordinance provisions appertaining to residential districts commonly provide for permitted incidental or accessory uses and generally limit the use of secondary detached buildings on the premises to the permitted incidental or accessory uses. It is clear that, as a general proposition, ordinance provisions may properly restrict a secondary detached building in a residential district to uses purely incidental to residence in the main building on the premises; and that such provisions are to be upheld where consistent with the intent and effect of the ordinance as a whole. (See 1 Yokley on Zoning Law & Practice [2d ed.], § 64.)
*1048 The defendants here do not in fact question the validity of the above-quoted Larchmont ordinance provisions, that is, in their application generally to residential property in a residence district. Defendants in their brief say that the ordinance “ should be upheld ”, but “ that the Village should not be permitted * * * to force an owner to vacate a one-family dwelling which can be demonstrated to be a perfectly legal building which is being used in a manner permitted by a strict application of the ordinance ”. It is particularly defendants’ contention that the subject building is not to be considered as accessory to the main residence on the lot but is to be considered as an independent free standing building existing in compliance with the provisions of the ordinance. In support of their contention, the defendants argue that the zoning ordinance permits the subdivision of lots in a one-family ‘1 B-10 ’ ’ district. Therefore, they have theoretically subdivided the entire premises owned by them so as to take away from the same and assign to the subject building a quantity of land, claiming that such building and land are an independent house and lot.
The theoretical subdivision of defendants’ premises as suggested by them does not, however, constitute a good defense to this action for two reasons. Firstly, the subdivision as suggested by defendants may not be accomplished in conformity with the provisions of the existing ordinance, in that the same would result in violation of the minimum lot area provisions and of the side and rear yard requirements appertaining to an “B-10” district. Secondly, and in any event, the ordinance must be held to speak and be given effect in accordance with the existing on-the-ground situation and the attendant circumstances ; and, bearing in mind the same, the question is whether or not the entire premises are to be regarded as a single lot and the subject building held an accessory building within the meaning of the provisions of the ordinance. In this connection, it appears that the premises have always been owned and held as a single lot. The subject building was designed and erected as an accessory building, and, for a long time prior to and at the time the enactment of the 1954 ordinance, was so used. Since then there have been no changes in the layout or arrangement of the premises and there has been no subdivision of the same in fact or on the record. The building itself remains structurally the same with the residential portion of the same situate on the second floor over the garage, hobby shop and game room located on the first floor. Therefore, in my opinion, the subject building must still be regarded as an accessory building in determining the effect of the present ordinance *1049 provisions and in applying the same. Thus, it follows that the defendants are presently acting in violation of the terms thereof. (Cf. Cobble Close Farm v. Board of Adjustment, 10 N. J. 442.)
Defendants make the further point that the plaintiff building inspector is not entitled to the injunction requested because he has failed to establish that special damages have resulted or will result from the occupancy of the subject building in violation of the terms of the ordinance. It is specifically provided in the ordinance that the same shall be enforced by the building inspector, and under the circumstances, he has the right to invoke the aid of the court without plea or proof of special damages. (See City of Utica v. Ortner, 256 App. Div. 1039, and Village of Old Westbury v. Hoblin, 141 N. Y. S. 2d 186.)
Finally, it should be pointed out that planning, zoning and variance of zoning provisions are primarily for the local authorities and that the court may not interfere with valid local regulations and determinations. The defendants, conceding the validity of the pertinent local zoning provisions, and, in effect, conceding that the occupancy of the subject building was presently nonconforming and that the matter was one for the local authorities, did, following their purchase of the property, apply to the local board of appeals for a variance to permit occupancy of the subject building as an independent one-family dwelling. The application, following due hearing, was denied by the board of appeals. Defendants did not seek the review of such determination, and it is binding on them. For this court to refuse to decree compliance with the ordinance provisions in question would be tantamount to approval of a variance with such provisions and thus amount to a collateral overruling of the determination of the zoning board. This, the court should not do.
Judgment is directed for plaintiff, without costs. Settle same on notice.