Jack Stanislaw, J.
This article 78 proceeding is brought: (1) to annul a decision of respondent Town of Huntington Zoning Board of Appeals (“Zoning Board ”) dated March 14, 1968, involving the location of the zoning district boundary line which divides petitioner’s premises into residence B and C districts; and (2) for an order directing the Planning Board of the Town of Huntington (“ Planning Board ”) to approve, as submitted, a certain plat plan, subdividing petitioner’s premises into six building plots (“ Penny Heights Subdivision Plat ”).
The property in question is a 3.4 acre parcel, bounded on all sides by improved property shown on filed subdivision maps. Its only access to a public road is a small section on the extreme easterly side of the property, abutting Court Drive. That section is improved with a one-family house, which has a certificate of occupancy indicating that it lies within a residence zoning E district (now comparable to a residence C zone). Because the balance of the property is landlocked, petitioner will be required to demolish the existing building to develop a road, approximately 50 feet wide, leading from the interior to Court Drive.
Under the existing zoning ordinance, the minimum area requirements are 46,460 square feet in residence B districts and 10,000 square feet in residence C districts. Petitioner proposes to subdivide the property into 6 building plots, ranging in size from 13,813 to 22,281 square feet. The proposed subdivision is based upon the calculations of petitioner’s surveyor, who located the disputed zoning boundary line in such a manner that plot 1, most of plot 2 and a small section of plot 3 (as shown on Penny Heights Subdivision Plat) lie in a residence C zone and the balance of the property in a residence B zone.
Respondent Planning Board tentatively denied approval of petitioner’s preliminary subdivision plan on August 16, 1967 on the ground that it noted a “ discrepancy in the location of the *161 zoning line ” and recommended a restudy in the lot yield. No formal notice of the decision was mailed to petitioner, but the board advised that one would be forthcoming and in the meantime suggested that petitioner’s attorney and surveyor confer with the director of the Planning Board, one Mr. Letson (“Letson”). The parties, however, were unable to reconcile their differences. Not having received a formal notice denying the preliminary plan, petitioner proceeded with preparation of a final plan which was submitted to the Planning Board and on September 27,1967 was denied.
Claiming the denial was arbitrary and invalid, petitioner made application at Special Term of the Supreme Court to annul the September 27,1967 decision. The Planning Board moved to dismiss on the ground petitioner had not exhausted its administrative remedies because a valid dispute exists as to the location of the zoning district boundary line. The motion to dismiss was granted without prejudice to a renewal in due course and the matter remanded to the Zoning Board for a determination of the true location of the boundary line.
Accordingly, on February 8, 1968 a hearing was held before respondent Zoning Board. Testifying on behalf of petitioner was his original surveyor, Peter E. Fauser (“ Fauser ”) and a second surveyor, George B. Haubenreich (“Haubenreich”) who had been retained by petitioner to conduct an independent study with respect to the location of the disputed boundary line. Letson testified on behalf of the Planning Board. Each of said witnesses went into great detail with respect to their findings and agreed that because there was no specific metes and bounds description of the zoning line at the area of petitioner’s premises and because the actual line is not shown on the official zoning map, pursuant to the applicable zoning ordinance, it must 11 be determined by the scale of the [zoning] map measured from a given line ” (Huntingtown Town Ordinance, art. Ill, § 3). The legend appearing on the certified copy of the Town of Huntington Zoning Map indicates a scale of one inch to 1,000 feet.
Fauser arrived at his determination by plotting a line, according to the scale of said zoning map, starting from zoning lines shown on approved and existing filed subdivision maps of the areas immediately adjacent to the subject premises. Haubenreich neither saw nor relied on Fauser’s calculations but conducted his own study, also applying the scale of the zoning map, but plotting his line from a street and then along the zoning lines as shown on other filed and approved subdivision maps of developed property of adjacent areas. Letson testified that he selected points of origin along Green Hill and Melville Boad as *162 shown on an existing street map of the town and plotted his line, according to the scale of the zoning map. Those streets, however, are a considerable distance from petitioner’s premises. Letson agreed that there are other procedures that could be followed, but in his opinion, his is the most accurate available. He agreed, however, that petitioner’s witnesses are eminently qualified and highly reputed licensed surveyors and did not dispute their calculations. Applying his procedure, Letson located the boundary line approximately 100 feet west of Fauser’s line, while Haubenreich placed the boundary at approximately the same location as the Fauser line.
Without stating the basis for its determination, the Zoning Board apparently adopted Letson’s conclusions and rendered a decision accordingly. Not only does the decision fail to describe a “given line” (as referred to in Building Zone Ordinance, art. Ill, § 3) from which the boundary line is determined, but it fails to indicate any rational basis for rejecting the methods, procedures or conclusions of petitioner’s surveyors and its reasons for adopting Letson’s conclusions.
Significantly, a previous staff study made by the Planning Board under Letson’s supervision (as indicated by a drawing attached to his affidavit on the earlier proceeding) determined that the boundary line is located almost 100 feet east of the line now recommended by Letson.
It is the court’s opinion that each of the various studies was conducted under proper professional procedures. But taking into consideration, that a variation of only 1/10 of one inch will result in a difference of 100 feet, (applying the scale of the official zoning map) the differences among each of the studies reflect a margin of error which is not unreasonable. Each study, by necessity required a degree of approximation precluding an exact or precise determination. Moreover, it is a matter of elementary geometry that because the arc of a circle increases in proportion to the length of the radius, the margin of error, in plotting a line, will likewise increase in proportion to the distance between such line and the point or line from which it is measured.
Doubt as to the location of a zoning boundary line may render the entire zoning ordinance unenforcible (Adams v. West Seneca, 280 App. Div. 1038, mot. for lv. to app. den. 281 App. Div. 942), unless the ordinance contains some description to clearly indicate the legislative intent with respect to the property affected (Mallet v. Village of Mamaroneck, 283 App. Div. 1094, affd. 308 N. Y. 821). Where, as in this case, the boundary line is not specifically defined but can be reasonably determined by the aid *163 of extrinsic proof the ordinance should be upheld. Under such circumstances, however, the burden of proving the proper location rests with the municipality and any doubts as to such proof should be resolved in favor of the landowner (1 Anderson, American Law of Zoning [1968], § 8.06).
Planning, zoning and the variance of zoning provisions are primarily for local authorities and courts are reluctant to interfere with valid local regulations (Griffin v. Reville, 1 Misc 2d 1045). But since zoning ordinances are in derogation of the common law, they must be strictly construed against the municipality (Matter of 440 East 102 St. Corp. v. Murdock, 285 N. Y. 298). Moreover, where there is ambiguity or doubt with respect to the interpretation of a zoning regulation, it must be resolved against the municipality seeking to enforce it and in favor of the one whose property is affected (Matter of Glenel Realty Corp. v. Worthington, 4 AD 2d 702).
Since the boundary here in dispute has not been specifically defined by the ordinance itself and is not indicated on the zoning map in question and because the differences in the conclusions reached by each of the three qualified experts are neither unreasonable nor substantial, and the Zoning Board having failed to indicate a rational basis for rejecting the conclusions reached by petitioner’s- experts in favor of Letson’s conclusions, it is the opinion of the court that the decision of the Zoning Board is arbitrary and should be annulled. Applying the foregoing principles of law, the boundary should be determined as indicated by the blue line shown on petitioner’s Exhibit 1-A, dividing the premises into residence B and C zoning districts.
We cannot sustain the objection asserted by respondent Planning Board, that the petition should be dismissed on the ground it fails to separately state, plead and number the separate causes (CPLR 3014). Having interposed an answer to the petition, said respondent has waived its right to assert such objection (Albemarle Theatre v. Bayberry Realty Corp., 27 A D 2d 172). The court does agree, however, that petitioner’s application for an order directing the Planning Board to approve the “ Penny Heights Subdivision Plat”, as submitted, is premature. The map should be resubmitted and approved or rejected in accordance with the applicable rules and regulations of said board based, however, upon the location of the zoning district boundary line as determined by the judgment to be entered hereon in accordance with the foregoing.
Settle judgment granting the petition as it relates to the March 14, 1968 decision of respondent Zoning Board and dismissing same with respect to respondent Planning Board.